498 A.2d 432

**COMMONWEALTH of Pennsylvania**

v.

**Bruce PERSON, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 1985.

Filed Sept. 6, 1985.

Seymore H. Johnson, Jr., Philadelphia, for appellant.

Anna Hom, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

Following a jury trial, appellant Bruce Person was convicted of first-degree murder, aggravated assault, and possessing an instrument of crime. The conviction stemmed from the death of his wife, Beatrice Person. After denial of post-verdict motions, appellant was sentenced to life imprisonment for murder and to concurrent prison terms of two and a half to five years for aggravated assault and one to two years for the weapons offense. This appeal followed.

The testimony presented at trial indicated that on May 5, 1982, at approximately 2:50 p.m., Person went to the coffee shop where his wife worked to speak with her. Their conversation ended in argument soon thereafter and the decedent walked back into the rear of the shop. Person quickly followed her and, as he entered the kitchen, he picked up a utensil and began stabbing her repeatedly.

Dorothy Garland, the decedent's grandmother, was sitting in the apartment over the shop when she heard someone yelling for help. Mrs. Garland ran downstairs to the shop where she found Person kneeling over the decedent, stabbing her. Person then proceeded to slash Mrs. Garland across the arm with a knife.

A 13-year old boy who had been working in the coffee shop approached a Mr. James Long, located across the street, for assistance. Long ran to the coffee shop where he found Mrs. Garland holding her arm and a man leaning over a young woman striking at her. The man physically engaged Long, striking him repeatedly about the face and chest with his fists. Long retaliated, but the man escaped. Although Long was unable to identify the man who struck him, he did state that they were the only people present in the shop at the time.

The police arrived at the scene at approximately 3:40 p.m. where they found the decedent lying on the floor unconscious. An ambulance was summoned to transport the victim to the hospital. She was pronounced dead on arrival as a result of multiple stab wounds. Person was arrested that same evening.

Appellant's first contention is that the crime of murder was not properly explained to the jury. Specifically, appellant argues that the definition of malice given by the trial court was grossly in error in that the court defined malice and intent as one and the same. Thus, appellant submits, the court told the jury that intent is the only element necessary to be proven beyond a reasonable doubt, thereby relieving the Commonwealth of its burden to prove the existence of malice to sustain a first-degree murder conviction.

The trial court defined malice as follows:

A killing is with malice and therefore murder if the killer acted with one of the following states of mind: An intent to kill or an intent to inflict serious bodily harm or injury or a wickedness of disposition, a hardness of heart, cruelty, recklessness of consequences, and a mind without

regard to social duty, indicating an unjustified disregard for the probability of death or great bodily harm, and an extreme indifference to the value of human life.

Our standard of review in determining whether a jury instruction is proper is well documented. A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations. *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 481 A.2d 952 (1984); *Commonwealth v. Newman*, 323 Pa.Super. 394, 470 A.2d 976 (1984); *Commonwealth v. Stauffer*, 309 Pa.Super. 176, 454 A.2d 1140 (1982); *Commonwealth v. Jones*, 300 Pa.Super. 338, 446 A.2d 644 (1982); *Commonwealth v. Peterson*, 271 Pa.Super. 92, 412 A.2d 590 (1979). The instructions to the jury in the instant case complied fully with these requirements. In fact, the instruction given by the trial court is identical to the instruction formulated by the Committee on Proposed Standard Jury Instructions. *See* Pa. Standard Jury Instructions § 15.2501A (Crim.) (1981).

A comparison of the court's charge in the case at bar with the definition of malice as applied to first-degree murder in our previous decisions indicates that the charge was proper as a matter of law inasmuch as it furnished the jury with an accurate statement of the elements comprising first-degree murder. This Court has recently promulgated the following definition of malice:

> The Pennsylvania Supreme Court has established that malice may be inferred from attending circumstances. It consists either of an express intent to kill or inflict great bodily harm, or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm. *Commonwealth v. Matthews*, 480 Pa. 33, 389 A.2d 71 (1978); *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968).

*Commonwealth v. Kersten*, 333 Pa.Super. 343, 352, 482 A.2d 600, 604 (1984). An identical definition of malice was

enunciated by the Supreme Court in *Commonwealth v. Gardner*, 490 Pa. 421, 416 A.2d 1007 (1980). In *Gardner*, the Court further stated:

> [T]o support a finding of first degree murder, we must find that the killing was a malicious one accompanied by a specific intent to kill. If the act of the defendant under all the circumstances properly gives rise to an inference that the appellant knew or should have known that the consequence of his act would be death or serious bodily harm, malice is present.

*Id.*, 490 Pa. at 425, 416 A.2d at 1008.

We find the trial court's instructions in the instant case to be in complete harmony with accepted definitions of malice. Accordingly, we reject the appellant's claim and hold that the trial court's instructions were entirely proper.

Appellant's second claim is that trial counsel should have been allowed to withdraw from the case when he informed the calender judge that the attorney-client relationship between Mr. Person and himself had deteriorated. At a pre-trial hearing held on June 13, 1983, trial counsel stated that appellant told him that he did not want him to be his lawyer. Counsel further stated that they almost got into a fistfight and expressed concern for his own personal safety at trial. Appellant alleges that under such circumstances, it was an abuse of the court's discretion not to appoint new counsel.

We note initially that there is some confusion as to whether trial counsel made a proper motion to withdraw from the case. Several days prior to commencement of appellant's trial, trial counsel appeared before the court to present appellant's omnibus pre-trial motions. He also stated the following:

> [Trial counsel]: I really have two problems. One problem developed yesterday. I went to see Bruce Persons. Bruce Persons said he didn't want me to represent him, that I was from Buford Tatum's office, I was out of the same office that Buford Tatum is from. Buford Tatum had had the case initially. When he resigned, the case

was—I was then appointed counsel for Bruce Persons. As it went, we almost got into a fist fight at the prison and I wanted the court to know that. I also want the Court to know that the man did stab his wife thirty-four times. I would hope that if I am forced into remaining in the case, that this guy be searched and—

The Court: Sure, he would be searched.

[Trial Counsel]: I mean, since I have to sit right by him, pencils and all that kind of stuff, I don't really want to have my attention totally on him and not what I'm doing. As I said, I don't know how it's going to develop, but it was not very pleasant yesterday and I was upset by it all, but I intend on defending myself. I don't intend to let this man hurt me.

The Court: Sure.

[Trial Counsel]: Now, the other thing I want the court to be aware of is that he is not at all cooperating with me. I do need, however, in order to defend the man, a psychiatric examination. If the court could order a forthwith psychiatric examination, it would be most helpful to me.

The Court: Well, that should have been done long ago.

■ Contrary to appellant's assertions, we find no evidence from this colloquy of any request by trial counsel to withdraw from the case. Nor does present counsel in his brief to this Court direct us to any place in the record where a written petition was filed or the issue of withdrawal was otherwise raised. *See* Pa.R.A.P. 2117(c) (statement of place of raising or preservation of issues); *see also* Pa.R.Crim.P. 306, 309(a), 42 Pa.C.S.A. Appendix (1983). From our reading of the record, it appears counsel told the court only that appellant was dissatisfied with counsel and that he wanted appellant to be routinely searched. Consequently, and under ordinary circumstances, this issue would not be reviewable on appeal since it was not raised by the appellant at the trial court level. *See Neshaminy Water Resources Authority v. Del-Aware Unlimited, Inc.,* 332 Pa.Super. 461, 481 A.2d 879 (1984); *Daset Mining Corporation v. Indus-*

*trial Fuels Corporation,* 326 Pa.Super. 14, 473 A.2d 584
(1984). However, the opinion of the post-trial motions court
interpreted the brief exchange between trial counsel and
the court as a proper motion to withdraw from the case.
Therefore, for our purposes of analysis, we too shall as-
sume that trial counsel took the proper steps for requesting
withdrawal.

■ Upon appellate review, we are mindful that the deci-
sion whether a petition for change of court-appointed coun-
sel should be granted is within the sound discretion of the
trial court, *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d
462 (1975); *Commonwealth v. Tuck,* 322 Pa.Super. 328, 469
A.2d 644 (1983); *Commonwealth v. Johnson,* 309 Pa.Super.
117, 454 A.2d 1111 (1983); *Commonwealth v. Olivencia,*
265 Pa.Super. 439, 402 A.2d 519 (1979), and as such, should
not be overturned unless we find an abuse of that discre-
tion. The issue presented for our review, therefore, is
whether the lower court's denial of trial counsel's petition
to withdraw from the case amounted to an abuse of discre-
tion.

In *Commonwealth v. Pittman,* 320 Pa.Super. 166, 174,
466 A.2d 1370, 1373 (1983), we defined the test for an abuse
of discretion as being:

> [I]n determining whether or not the trial judge has palpa-
> bly abused his discretion, we should bear in mind that it is
> necessary to establish more than a mere error of judg-
> ment. It is only if we determine that the "law is overri-
> den or misapplied, or the judgment exercised is manifest-
> ly unreasonable, or the result of partiality, prejudice, bias
> or ill-will, as shown by the evidence or the record, [that]
> discretion is abused." *Commonwealth v. Niemetz,* 282
> Pa.Super. at 445 n. 12, 422 A.2d at 1376 n. 12, *quoting,*
> *Man O'War Racing Association Inc. v. State Horse*
> *Racing Commission,* 433 Pa. 432, 451 n. 10, 250 A.2d
> 172, 181 n. 10 (1969), *quoting, Mielcuszny v. Rosol,* 317
> Pa. 91, 93–94, 176 A. 236, 237 (1934).

■■■ Under the circumstances of the instant case, we find no abuse of discretion by the court in denying appellant's request for replacement of counsel. It is well settled that an indigent is entitled to free counsel, but not to free counsel of his choice. *Commonwealth v. Johnson, supra; Commonwealth v. Olivencia, supra.* Although the right to counsel is absolute, there is no absolute right to a particular counsel. *Johnson; Olivencia.* A motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons. Pa.R.Crim.P. 316(c)(ii).

■■■ The appellant argues here that the trial court's refusal to appoint new counsel is inconsistent with the Supreme Court's holding in *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976). Unlike the case in *Tyler,* in which appellant's dissatisfaction with his court-appointed attorney resulted from irreconcilable differences between them as to the manner in which the trial should be conducted, Person's dissatisfaction with his lawyer apparently stemmed from his general unhappiness with court-appointed attorneys. In fact, trial counsel was already appellant's second court-appointed attorney. The record does indicate that there was a measurable degree of hostility between trial counsel and appellant. However, the Sixth Amendment right to counsel does not guarantee a meaningful rapport between an attorney and his client. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The trial court noted in its opinion that trial counsel had, despite his personal differences with the defendant, performed commendably and professionally in a difficult case. The trial court's denial of counsel's petition to withdraw from the case was, therefore, clearly not a manifestly unreasonable exercise of judgment. Consequently, we cannot conclude that the trial court committed a palpable abuse of discretion and we will not disturb appellant's conviction.

AFFIRMED.