574 A.2d 1116

**COMMONWEALTH of Pennsylvania**

v.

**Darren ENNIS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1989.

Filed May 16, 1990.

4

Stanford Shmukler, Philadelphia, for appellant.

Suzan Willcox, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

Appellant, Darren Ennis, appeals from a judgment of sentence imposed following a jury verdict finding him guilty of robbery, aggravated assault, possession of an instrument of crime, and conspiracy. After denying appellant's post-trial motions, the trial court sentenced appellant to a term of imprisonment of ten to twenty years on the robbery charge and imposed a consecutive six month to four year prison term for conspiracy and a concurrent sentence of five to ten years on the assault charge. No sentence was

6

imposed for the possession of an instrument of crime conviction. Following the denial of his petition for reconsideration of sentence, appellant brought this timely appeal. Appellant is represented by new counsel on this appeal.

On appeal, appellant claims that (1) trial counsel was ineffective for failing to object to the sufficiency of the evidence to sustain a conviction for robbery; (2) trial counsel was ineffective for failing to present a point for charge or to object to the charge on the elements necessary to prove robbery;[1] (3) trial counsel was ineffective in failing to move to suppress an in-court identification; (4) trial counsel was ineffective in failing to object to an improper cross-examination of a character witness; (5) the separate sentence for the aggravated assault charge was illegal because the robbery and aggravated assault merged for purposes of sentencing; (6) the sentencing court abused its discretion in considering appellant's low I.Q. as a factor in sentencing appellant. Because we find that the aggravated assault merged with robbery for sentencing purposes, we vacate the five to ten year sentence for the aggravated assault charge. We also find that the sentencing judge abused his discretion in relying upon appellant's low I.Q. in sentencing appellant and we vacate the judgment of sentence and remand the case for resentencing.

The underlying facts of the case are as follows. During the early morning hours of July 31, 1987, William DeShields was walking with his friend, James Horace, in the vicinity of 55th and Chestnut Streets, Philadelphia, when two men approached them from behind. Suspecting trouble, Mr. Horace alerted DeShields and then ran for safety. When DeShields turned around to face his followers, he was shot in the stomach by one of them and fell to the ground. Two police officers in an unmarked car happened to be in the

1. Appellant raises issues (1) and (2) directly as well as in the context of claims of ineffectiveness of counsel. Because the issues were waived due to trial counsel's failure to adequately address them in post-trial motions and argument, we consider them in the context of claims of ineffectiveness. *See Commonwealth v. Henry,* 341 Pa.Super. 146, 491 A.2d 193 (1985).

area and sighted the three men on the corner. When the police heard the gunshot ring out, they gave chase to the two assailants. The officers apprehended one of the two men, Christopher Hightower. Seven months later, in February of 1988, Hightower, angered at his accomplice for not providing him with bail assistance, divulged appellant's name to the police. Appellant was tried and convicted by a jury on September 6–7, 1988.

## I. SUFFICIENCY OF EVIDENCE TO SUPPORT ROBBERY CONVICTION

Appellant argues that trial counsel was ineffective for failing to object to the sufficiency of the evidence to sustain a conviction for robbery.

In determining whether counsel rendered ineffective assistance, we first ascertain whether the issue underlying the claim is of arguable merit. *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). If appellant's claim does have arguable merit, we then determine whether counsel's chosen course of action had any reasonable basis designed to serve the interests of his or her client. *Id.* If our review of the record reveals that counsel was ineffective, appellant will be granted relief if he demonstrates that counsel's ineffectiveness worked to his prejudice. *Id.; Commonwealth v. Pierce*, 515 Pa. 153, 159, 527 A.2d 973, 976 (1987). To prove actual prejudice from the ineffectiveness, appellant must show that counsel's error had an adverse effect on the outcome of the trial. *Davis, supra*, 518 Pa. at 83, 541 A.2d at 318.

We first determine whether the underlying issue—the sufficiency of evidence to sustain the verdict—is of arguable merit. Appellant claims that the evidence was insufficient to sustain the robbery verdict because there was no proof that anything was taken from the victim and there was no evidence that the victim was threatened.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most

8

favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075, 1079 (1987), *citing Commonwealth v. Syre*, 507 Pa. 299, 303, 489 A.2d 1340, 1342 (1985). The jury is free to believe all, part, or none of the evidence. *Commonwealth v. Fahy*, 512 Pa. 298, 308, 516 A.2d 689, 694 (1986) (citations omitted). "It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution." *Id., quoting Commonwealth v. Whack*, 482 Pa. 137, 140, 393 A.2d 417, 419 (1978).

To sustain a conviction of robbery, the Commonwealth must establish beyond a reasonable doubt that appellant, in the course of committing a theft, inflicted serious bodily injury upon Mr. DeShields, or threatened him with or intentionally put him in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a). The element "in the course of committing a theft" is proven if the Commonwealth proves that the offense occurred during an attempt to commit theft or in flight after the attempt or commission. 18 Pa.C.S.A. § 3701(a)(2). An attempted theft is committed when a person, with intent to commit a theft, does any act which constitutes a substantial step toward commission of the theft. 18 Pa.C.S.A. § 910(a). A person commits a theft if he or she "unlawfully takes ... movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). In light of these statutory definitions, the Commonwealth must prove beyond a reasonable doubt that appellant, with the intent to take property from DeShields and deprive DeShields of the property, took a substantial step toward those ends, and during the course of the act, inflicted serious bodily injury upon DeShields. We find that the Commonwealth has met its burden.

DeShields testified that on July 31, 1987, as he was walking down the street with his friend, the friend alerted him to the fact that they were being followed. N.T. Sep-

tember 6, 1988 Volume II at 29–30. DeShields turned to face his followers and saw appellant who mumbled something which DeShields could not understand. As soon as DeShields noticed that appellant was pointing a gun at DeShields' chest, DeShields immediately tried to knock the gun down, and as he did so, appellant shot him in the stomach. DeShields required hospitalization and surgery for treatment of the bullet wounds. *Id.* at 33–34, 36. Appellant also testified that $280 was missing from his pocket after the incident. The police did not find the money when they arrived on the scene a few minutes after the attack.

Christopher Hightower, appellant's accomplice, testified that before the incident, appellant and Hightower drove in appellant's car from the Germantown section of Philadelphia to 55th and Chestnut Streets, looking for someone to "stick up" for some money. N.T. September 6, 1988 Volume II at 94–95. They parked on Chestnut Street and got out of the car. *Id.* at 96. According to Hightower, appellant approached DeShields and DeShields' companion from behind, pulled a gun out, and said "Where the money at? Where the money at?" *Id.* at 96. Hightower then saw appellant shoot DeShields. *Id.* at 97.

The testimony of DeShields and Hightower is sufficient to prove the elements of robbery beyond a reasonable doubt. The evidence shows that during the course of an attempted theft, appellant inflicted serious bodily injury upon DeShields. The attempted theft was proven by Hightower's testimony, which showed that appellant, with the intent of stealing money from DeShields, came up from behind DeShields with a gun, asked for money, and then shot DeShields as DeShields turned around and tried to knock the gun to the ground. We find that this constitutes a substantial step toward the commission of a theft.

Appellant points out that the testimony of Hightower contradicts that of DeShields, who testified that he did not hear his assailant ask for money, but that he did hear appellant mumble something. The fact that DeShields did

not hear appellant ask for money does not make the attempt fail. The fact that appellant approached DeShields with a gun, with the intent of taking money from him, even in the absence of a request for money, establishes that appellant did an act which constituted a substantial step toward the commission of the theft within the meaning of the statute defining criminal attempt, 18 Pa.C.S.A. § 901(a). *See Commonwealth v. Everett*, 299 Pa.Super. 182, 186, 445 A.2d 514 (1982) (although defendants neither demanded nor took any money during the course of a hold-up, attempt to commit theft could be inferred from evidence that defendants entered store, held gun to head of storekeeper, and fatally shot the store owner).

The jury could also have reasonably inferred that appellant took the $280 which was missing from DeShields' pocket after the incident, and thus actually committed theft. *See Commonwealth v. Brown*, 290 Pa.Super. 448, 434 A.2d 838 (1981) (where rape victim left her handbag in defendant's possession and handbag was later found with cash, checks and credit cards missing, evidence was sufficient to support robbery conviction).

Since appellant has failed to show that the underlying issue of his ineffectiveness claim, i.e., insufficiency of evidence to support his conviction of robbery, has arguable merit, trial counsel cannot be deemed ineffective for failing to assert it. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985).

## II. ADEQUACY OF JURY CHARGE ON THE ELEMENTS OF ROBBERY

■ Appellant challenges the performance of trial counsel for failing to object to the court's allegedly incomplete and confusing jury instructions on the offense of robbery. As stated above, we first determine whether the underlying issue—that the jury charge was erroneous—possesses arguable merit. We conclude that it does not.

"A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to

guide the jury properly in its deliberations." *Commonwealth v. Person*, 345 Pa.Super. 341, 345, 498 A.2d 432, 434 (1985) (citations omitted). *See also Commonwealth v. Bey*, 249 Pa.Super. 185, 196, 375 A.2d 1304, 1310 (1977). In reviewing the court's charge for error, we must read the charge as a whole; "error will not be predicated upon an isolated excerpt." *Commonwealth v. Wallace*, 347 Pa.Super. 248, 256, 500 A.2d 816, 820 (1985) (citations omitted). *See also Commonwealth v. Ohle*, 503 Pa. 566, 582, 470 A.2d 61, 70 (1983) (appellate examination of jury charge must be based on examination of it as whole to determine whether it was fair or prejudicial) (citation omitted). "It is the general effect of the charge that controls." *Commonwealth v. Wallace, supra* (citation omitted).

*Commonwealth v. Magwood*, 371 Pa.Super. 620, 622–23, 538 A.2d 908, 909 (1988), *appeal denied* 519 Pa. 653, 546 A.2d 57 (1988).

The statutory definitions of the elements of the offense of robbery are set forth above. Appellant challenges the court's instructions as erroneous for failing to adequately define attempt to commit theft. Appellant argues that the court should have defined "attempt to commit theft" because the only aspect of robbery that could arguably be present in this case is attempt to commit a theft. We disagree.

As we noted above, the jury could have reasonably inferred that an actual theft occurred from the fact that DeShields had $280 in his pocket before the attack and he was missing the money after the attack. The jury instructions adequately defined theft:

BY THE COURT: You have to find that there was a theft and that the injury was caused, serious bodily injury was caused during the taking of someone else's property with the intention of depriving that person of that property ...

N.T. September 7, 1988 Volume II at 148–150. Trial counsel was not ineffective for failing to object to the court's charge, since the charge adequately defined theft.

█ Even if the only basis for the robbery conviction was that appellant inflicted serious bodily injury during the course of an attempted theft, appellant's ineffectiveness claim would fail. We note that the trial court's instructions on attempted theft were deficient to the extent that they did not clearly state that the jury must find that appellant took a substantial step toward completing the theft.

Appellant's ineffectiveness claim fails, however, because trial counsel's failure to submit a proper jury charge was not prejudicial. This Court has held that where the evidence of the case supports the omitted jury instruction, the failure to define the element to the jury is not prejudicial. *Commonwealth v. Humpheys*, 367 Pa.Super. 154, 532 A.2d 836, 840 (1987), *appeal denied* 518 Pa. 624, 541 A.2d 1136 (1988), *citing Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 59–60, 512 A.2d 1199, 1208–09 (1986); *Commonwealth v. Goins*, 348 Pa.Super. 22, 501 A.2d 279 (1985); *Commonwealth v. Mlinarich*, 345 Pa.Super. 269, 287, 498 A.2d 395, 403–404 (1985) (en banc), *aff'd* 518 Pa. 247, 542 A.2d 1335 (1988). As we noted above, the evidence in this case establishes, at the very least, the elements of an attempted theft. We find that trial counsel's failure to object to the court's charge on attempted theft was not prejudicial.

### III. FAILURE TO OBJECT TO THE CROSS–EXAMINATION OF CHARACTER WITNESS

Appellant claims that trial counsel was ineffective for failing to object to the Commonwealth's cross-examination of appellant's mother, whom appellant had offered as a character witness. We find that appellant's ineffectiveness claim fails, as trial counsel's failure to object to the cross-examination could not have affected the outcome at trial.

█ Ordinarily, the scope of cross-examination of an adverse witness is limited to matters brought out on direct examination. *Commonwealth v. Cessna*, 371 Pa.Super. 89,

537 A.2d 834 (1988), *citing Commonwealth v. Lore,* 338 Pa.Super. 42, 487 A.2d 841 (1984); *Commonwealth v. Katsafanas,* 318 Pa.Super. 143, 464 A.2d 1270 (1983).

 On direct examination, appellant's mother, Ms. Ennis, testified that appellant is eighteen and a half years old, that appellant currently lives with her and was living with her at the time of the incident, that she does not know appellant's accomplice, and that appellant has a reputation among members of the community for being a truthful, peaceful and law-abiding citizen.

On cross-examination, the Commonwealth questioned appellant's mother on appellant's ownership of cars, appellant's ability to buy a car, and whether she ever saw him use other people's cars. Thus, the inquiry on cross-examination exceeded the scope of matters brought out during the direct examination. The aim of the questioning was to establish a link between appellant and a blue Cutlass he allegedly drove on the night of the attack on DeShields and to connect appellant with a white Cadillac seen parked in the driveway to Ms. Ennis' house on the afternoon that the police went to her home to arrest appellant.

Although trial counsel could have successfully lodged an objection to the Commonwealth's questioning of appellant's mother as to matters which exceeded the scope of cross-examination, appellant has not identified any prejudice suffered by him as a result of counsel's failure to object. We fail to see how the information elicited from Ms. Ennis during cross-examination could have had an adverse effect on the outcome at trial. Her testimony on cross-examination could not have contributed to the finding of appellant's guilt, because her testimony did not show that appellant had access to a blue Cutlass, and appellant did not deny ownership of the white Cadillac. The Commonwealth's case rested on the testimony of the victim, Mr. DeShields, and Christopher Hightower, appellant's accomplice.

We find that trial counsel's failure to object to the cross-examination of appellant's mother did not prejudice appellant.

## IV. SUPPRESSION OF IDENTIFICATION TESTIMONY

 Appellant challenges trial counsel as ineffective for failing to move to suppress DeShields' identification of appellant on the grounds that the identification was highly suggestive.

During the trial, DeShields identified appellant as his assailant. DeShields described the scene of the offense as being well-lit by street lights. DeShields testified that because appellant's face was so close to his when appellant shot DeShields, DeShields couldn't forget his face, and he had no doubt in his mind as to who shot him.

Shortly after the incident, DeShields gave only a vague description of his assailant to the police. Seven months after the attack, DeShields was unable to pick out appellant's photo from a photographic array. At a pretrial hearing about a week before the trial, appellant came into the courtroom and sat down next to DeShields. About fifty or sixty people were in the room. DeShields immediately recognized appellant as the person who shot him. On cross-examination, DeShields stated that it was not until after appellant's name was called out by the court and appellant stepped forward that he spoke to the district attorney about identifying appellant.

Appellant maintains that the out-of-court identification was so suggestive as to require suppression, and that the in-court identification must also be suppressed because it was irreparably tainted by the out-of-court identification. We disagree.

In reviewing claims of suggestive identification procedures, "we must determine whether the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process." *Commonwealth v. Thomas*, 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987), *appeal denied* 517 Pa. 616, 538 A.2d 498

(1987), *citing Commonwealth v. Voss*, 333 Pa.Super. 331, 482 A.2d 593 (1984); *Commonwealth v. Williams*, 323 Pa.Super. 512, 470 A.2d 1376 (1984). DeShields immediately recognized appellant at their first face-to-face meeting following the attack. Approximately fifty other people were in the room at the time of the identification. Purely by chance appellant chose to sit in a seat right next to DeShields' seat. The Commonwealth was in no way responsible for the circumstances under which DeShields identified appellant. Hence, nothing on the part of the Commonwealth indicates an impermissibly suggestive procedure. The fact that DeShields did not tell the district attorney that appellant was the man who shot him until after appellant's name was called out by the court and appellant stepped forward goes to the credibility of DeShields, not to the suggestiveness of the procedure.

In *Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979), our Supreme Court held that where a witness identified the appellant while the witness was sitting in the courtroom waiting to testify at the preliminary hearing, and nothing occurred or was done to point out the appellant to the witness or to distinguish the appellant from any other males in the courtroom, the identification circumstances were not suggestive. The circumstances of DeShields' identification of appellant were virtually identical to those in the *Ransome* case. We hold that the out-of-court identification procedure was not so suggestive as to deny appellant due process; thus, the in-court identification was not tainted by the initial identification. *See Thomas, supra* at 352, 526 A.2d at 381. The underlying issue of appellant's ineffectiveness claim, i.e., suppression of the out-of-court and in-court identifications for undue suggestiveness, lacks merit. Trial counsel cannot be deemed ineffective for failing to move to suppress the identifications.

### V. MERGER OF ROBBERY AND AGGRAVATED ASSAULT FOR SENTENCING PURPOSES

██ Appellant maintains that the trial court imposed an illegal sentence by failing to merge the robbery and aggra-

vated assault convictions for purposes of sentencing. The trial court imposed a sentence of ten to twenty years for the robbery charge and a concurrent term of five to ten years on the assault charge.

In the recent case of *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), our Supreme Court set forth a new test for merger of sentences, holding that the test for merger is strictly whether the separate offenses are lesser included and greater included offenses, i.e., the crimes do not merge for sentencing purposes unless the same facts support convictions of lesser included offenses. In *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989), decided the same day as *Leon Williams*, the Court elaborated on the merger doctrine:

> [I]f a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

521 Pa. at 364, 555 A.2d at 1233.

In light of these principles, we find that the offenses of aggravated assault and robbery do merge in this case. Aggravated assault is defined as:

> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> > (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702. The aggravated assault was established by appellant's act of shooting DeShields in the stomach. This same act established an element of the robbery offense, i.e., the infliction of serious bodily injury upon another. *See* 18 Pa.C.S.A. § 3701(a)(1)(i).

The Commonwealth argues that the pointing of the gun at appellant was such a distinct and separate act from the shooting that the robbery was completed when appellant pointed the gun at DeShields, *see* 18 Pa.C.S.A. § 3701(a)(1)(ii) (a person may be guilty of robbery if, "in the course of committing a theft, he ... threatens another with or intentionally puts him in fear of immediate serious bodily injury ..."), and that the subsequent shooting constituted an aggravated assault. We disagree that the pointing and shooting constituted multiple criminal acts.

In *Commonwealth v. Bell,* 386 Pa.Super. 164, 562 A.2d 849 (1989), this Court held that where the victim of the assault was struck by two blows in rapid succession, one to the head and one to the face, the blows did not constitute separate crimes because there was no break in the action. Similarly, we find that the pointing and shooting of the gun was one act for purposes of establishing the elements of robbery and aggravated assault. According to the testimony of DeShields, appellant pointed the gun at DeShields' chest, DeShields tried to push the gun down, and appellant fired the gun. These acts occurred in rapid succession. Appellant did not wave or shake the gun in a menacing manner or otherwise threaten DeShields with the gun. It appears from the testimony that appellant pointed the gun merely as a prerequisite for shooting the gun at DeShields. Given these particular facts, we find that appellant did not commit any other criminal act beyond that which was necessary to establish the bare elements of robbery.

We find that the aggravated assault offense merges with the robbery offense, and vacate the separate five to ten year term imposed for aggravated assault.

## VI. USE OF APPELLANT'S LOW INTELLIGENCE QUOTIENT AS A FACTOR IN SENTENCING

Finally, appellant challenges the sentencing court's reliance on appellant's limited intelligence in imposing a lengthy term of imprisonment. We find that the trial court

18

erred in considering appellant's low level intelligence as an aggravating factor for sentencing purposes.

This is a challenge to the discretionary aspect of appellant's sentence, and as such, must be considered a petition for permission to appeal, as the right to appeal from the discretionary aspect of sentencing is not absolute. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 511, 522 A.2d 17, 18 (1987); *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385, 1386–87 (1989) (en banc).

Before we can address the merits of the issue raised on appeal, appellant must demonstrate in his statement of reasons for allowance of appeal that there exists a substantial question as to whether the sentence imposed is appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b). *Commonwealth v. Anderson,* 381 Pa.Super. 1, 16, 552 A.2d 1064, 1072 (1988).

Appellant's statement of reasons for allowance of appeal alleges, in part, that the "propriety of the sentence as a whole" is in question because the trial judge used "defendant's pronounced and acknowledged mental retardation as an important factor in setting a lengthy period of imprisonment." Supplemental Brief for Appellant at 6. Further, appellant's statement of reasons states that the issue of whether a person's low I.Q. is an appropriate basis upon which to impose a lengthy sentence is an issue of first impression in Pennsylvania.

We find that appellant has raised a substantial question to warrant review of his sentence, because the statement of reasons claims that the trial court relied on an impermissible factor in sentencing appellant. We grant appellant's petition for permission to appeal from the discretionary aspects of his sentence.

In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not neces-

sary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.

*Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102 (1977).

Upon review of the sentencing judge's comments made at the sentencing hearings, we find that it reasonably appears from the record that the judge relied in part upon appellant's low intelligence in fashioning the sentence. At the hearing, trial counsel urged the court to view appellant's intelligence quotient as a mitigating factor in sentencing. The following colloquy took place during the sentencing hearing:

MR. QUINN: ... and I would also ask your honor to keep in mind the report about his intelligence. He's reported to have an I.Q. of 74 which the report characterizes as border line mentally retarded.

THE COURT: Yes, but that doesn't prevent a man from being an honest person, the fact that he had a low mentality. As a matter of fact, it seems, helps [sic] that kind of simplicity, mental simplicity does help keep one honest and trite. This man has not that. He may have that plus, the plus factors are the factors that concern us because they pose a danger, not only to himself but to society ...

\* \* \* \* \* \*

MR. QUINN: Well, in any case, with his, considering his youth and the circumstances of this case, considering the fact that he was under the influence of another person, and considering the fact that he was of marginal intelligence are—

THE COURT: The marginal intelligence gives me a great deal of concern. I mean, he has the ability to do what he did, his intelligence is low, which means that his judgment might be poor which means that he would pose a danger under similar circumstances that would not only fuel the wrong but compound it because he doesn't have the

ability, the natural intelligence to control himself. You tell me what do I do? He's more explosive than if he had the intelligence. He needs some real extensive type of training to—

MR. QUINN: I agree.

THE COURT: To get those traits out of him and improve his intelligence quotient. How do we do that? We can't keep him out, he needs a lot of time to do that, so the strictures are that he has to be put into a structured environment, and there maybe rectify his conduct. That's why we call it correctional institution. They correct the conduct, but he has a long road to hoe with the inability to comprehend his wrong ...

N.T. December 28, 1988 at 9, 14–15.

At the hearing on appellant's motion for reconsideration of sentence, counsel again urged the court to consider appellant's youth and low intelligence as mitigating factors:

MR. QUINN: ... I would respectfully submit that in the course of the sentencing proceedings, matters that were in fact matters which mitigated my client's actions were cited by the court as reason to give him a severe sentence; specifically his youth, his border line mental retardation were characterized by this court as something that caused the court concern and would warrant a stiffer sentence rather than factors to be considered in mitigation as a youth and border line mental retardation should be....

THE COURT: How old is he?

MR. QUINN: He's twenty now. Nineteen now.

THE COURT: Nineteen.

MR. QUINN: Right.

THE COURT: So he hasn't been an adult long enough to establish a criminal record. He only has a criminal record as a juvenile so he's coming from his juvenile to adulthood with the retardation that you're talking about. He hasn't reached there yet but he's [sic] a potential for causing great serious injuries. He has that potential. Because of his retardation and because of his youth, he

doesn't fully have a comprehension that using a gun in a guy's stomach is murderous.

MR. QUINN: And I submit that the court's statement today, and the court's statement at an earlier date constitutes an inadequate reason and in fact an erroneous reason upon which to base a statutory maximum sentence in view of the failure to have any prior record score.

THE COURT: I find from that reasoning that he is a potentially dangerous person. I've given you the basis for my thinking, so I think I'm entitled to make that determination.

N.T. February 1, 1989 at 3, 5–6.

From these remarks we can reasonably conclude that the court viewed appellant's low level intelligence as a factor which warranted imposing a more severe sentence.

 In imposing a sentence, a sentencing court must consider the individual characteristics and circumstances of a defendant, *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), and, in particular, the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721(b). Appellant does not argue that the sentencing court erred in considering his low level I.Q., but rather argues that the court erred in treating his low intelligence as an aggravating factor in setting the sentence.

A review of Pennsylvania caselaw on this topic reveals that limited intelligence of a defendant has been considered as a potentially mitigating factor, not an aggravating factor, in imposing a sentence. *See Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 261–62 (1988) (evidence of appellant's low I.Q. of 76 was placed before the jury as a possible mitigating factor); *Commonwealth v. Sheridan*, 348 Pa.Super. 574, 502 A.2d 694 (1985) (upholding sentence which fell below the sentence recommended in the Sentencing Guidelines where the sentencing court had relied, in part, upon the fact that the defendant "had restricted intelligence with an extremely weak ego structure"); *Commonwealth v. Anderson, supra.*

 Although our research reveals no cases dealing with whether it is permissible to consider a defendant's low I.Q. as an aggravating factor in determining an appropriate sentence, we note that the Pennsylvania statute which sets forth the sentencing procedure for first degree murder delineates aggravating factors and mitigating factors to be considered in sentencing. *See* 42 Pa.C.S.A. § 9711(d) and (e). A review of these factors shows that aggravating circumstances may generally be categorized as factors which result from some conduct or condition imposed by the defendant which make the crime more shocking or egregious. Thus, where the defendant behaves in such a way as to make the offense more reprehensible, such as where the defendant kills with the expectation of monetary reward, or the defendant kills by way of torture or while committing a felony or hijacking an aircraft, the jury may view the conduct as warranting the more serious penalty of death. In contrast, the mitigating factors set forth in the sentencing provision account for individual characteristics of the defendant which may affect the defendant's emotional or mental well-being at the time of the offense and which thus may impair the defendant's ability to appreciate the seriousness of his or her behavior. We note that the mitigating factors are generally circumstances over which the defendant has little or no control, as opposed to the aggravating circumstances which are created due to some "bad act" on the part of the defendant.

We hold that it is impermissible to use a defendant's low I.Q. as an aggravating factor in sentencing. We find that a defendant's intelligence level, an immutable characteristic over which an individual has no control, may not be considered as an aggravating factor in sentencing. We fail to see a connection between a person's intelligence, or I.Q., and his or her propensity to commit crimes or need for rehabilitation. Moreover, we disagree with the views of the trial court that appellant's low degree of intelligence makes appellant more likely to perform an illegal act, or that a longer period of incarceration would somehow improve ap-

pellant's intelligence. The trial court abused its discretion in relying upon appellant's low I.Q. to impose a more severe penalty.[2]

We vacate the judgment of sentence and remand the case for resentencing in accordance with this Opinion. Jurisdiction is relinquished.

POPOVICH, J. files a dissenting statement.

POPOVICH, Judge, dissenting:

I dissent from that portion of the Opinion wherein the Majority rules that the sentencing court abused its discretion in relying upon appellant's low intelligence quotient in imposing sentence.

In my view, the lower court did not abuse its discretion; rather it is the Majority which has installed blinders on the court's view of reality.

Of necessity the sentencing court must consider, among other factors, the intellectual capacity of the offender. The Majority cannot, it writes, find any cases pertinent to the issue as though this were an issue of first impression. There are no cases because it has always been the law, beyond cavil, that the sentencing court take into account an offender's mental background and his propensity to commit crime, his responsibility to society and his ability to control his actions, how best to improve his intelligence quotient and what his rehabilitative needs are.

All of these factors were considered by the sentencing court in a colloquy that covered almost 40 pages of transcript.

Although, admittedly, the sentence could be considered harsh, that does not mean that the sentence was ill-considered. And we must not, either, lose sight of the fact

2. We do not hold, as the Dissenting Statement suggests, that upon remand the sentencing court must impose a sentence shorter than the original sentence. We hold that in resentencing appellant, the court may consider only permissible factors and must impose a sentence consistent with those factors. The court may not use appellant's low I.Q. as an aggravating factor in fashioning the sentence.

that this young man shot, at close range, another human being with the intent to kill. It was a senseless, primitive act, an act not surprisingly perpetrated by one of low intelligence.

As the sentencing court stated,

THE COURT: The marginal intelligence gives me a great deal of concern. I mean, he has the ability to do what he did, his intelligence is low, which means that his judgment might be poor which means that he would pose a danger under similar circumstances that would not only fuel the wrong but compound it because he doesn't have the ability, the natural intelligence to control himself. You tell me what do I do? He's more explosive than if he had the intelligence. He needs some real extensive type of training to—

\* \* \* \* \* \*

THE COURT: To get those traits out of him and to improve his intelligence quotient. How do we do that? We can't keep him out, he needs a lot of time to do that, so the strictures are that he has to be put into a structured environment, and there maybe we can rectify his conduct. That's why we call it correctional institution. They correct the conduct, but he has a long road to hoe with the inability to comprehend his wrong, and his wrong was grave because it almost took somebody's life, loss of property and life.

Sentencing Transcript, p. 14.

Perhaps the Majority, had it comprised the sentencing court, would have imposed a less severe sanction, but for it to say that the sentencing court abused its discretion is to turn upside down and inside out the sentencing scheme of this Commonwealth.