J-S08033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE D. CALLENDER | : | |
| | : | No. 1109 WDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence July 6, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002359-2016

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED FEBRUARY 28, 2018**

Appellant Jesse D. Callender appeals from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County following his conviction by a jury on one count of criminal attempt to commit homicide, one count of robbery, two counts of aggravated assault, seven counts of recklessly endangering another person, seven counts of terroristic threats, one count of firearms not to be carried without a license, and one count of assault of a law enforcement officer.[1]  After a careful review, we affirm.

Following his arrest, Appellant, who was represented by counsel, proceeded to a jury trial from April 3 to April 7, 2017.  The trial court has aptly summarized the relevant evidence presented during trial as follows:

---

[1] 18 Pa.C.S.A. §§ 901(a), 3701(a)(1)(ii), 2702(a)(2), 2705, 2706(a)(1), 6106(a)(1), and 2702.1(a), respectively.

---

\* Former Justice specially assigned to the Superior Court.

On April 20, 2016, Ravi Singh ("Singh"), [the] assistant manager of Stop 22, the convenience store associated with the Marathon Gas Station in Murrysville, was working the register. N.T., Apr. 3-7, 2017, p. 72-74. At approximately 8:00 p.m., Singh, David Park (hereinafter "Park"), Mohammed Issa (hereinafter "Mr. Issa"), Michelle Issa (hereinafter "Mrs. Issa"), and Michelle Lawson (hereinafter "Lawson") were all present in the convenience store. [*Id.* at] 75-76. Singh noticed a young white male in his early 20s with a thin build wearing a baseball hat, later identified as [Appellant], enter the store, leave, and then return.[2] He believed the man went to the restroom. [*Id.* at] 79. When [Appellant] reentered the store, he went to the restroom again. [*Id.* at] 81. Singh noticed that [Appellant] was carrying something that resembled a duffle bag. [*Id.*] Once [Appellant] came out of the bathroom, he approached the counter and gave Singh some change to purchase a lottery ticket. [*Id.*] Singh noticed [Appellant] was wearing black latex gloves. [*Id.* at] 82. [Appellant] stepped aside to play the lottery ticket, asked Singh for a pen, filled out the back of the ticket, and gave it back to Singh to redeem the ticket. [*Id.* at] 82-83. When Singh scanned [Appellant's] ticket, however, it was not a winner. [*Id.* at] 83-84. Even after Singh informed [Appellant] that his ticket was not a winner, [Appellant] insisted that it was a winning ticket. [*Id.* at] 84. [Appellant] seemed disappointed when Singh explained that his ticket was not a winning ticket. [*Id.* at] 89.

At this point, [Appellant] gave Singh a gift card/credit card, and stated he wanted to buy $30.00 worth of gas. [*Id.* at] 89. When Singh attempted to process the card, it was declined. [*Id.*] When Singh informed [Appellant] that the card was declined, [Appellant] stated that it better work, and if Singh doesn't make it work, he's coming back with a gun. [*Id.* at] 90. Specifically, [Appellant] stated that he was going to get gas on the pump, and if the pump is not turned on, then he's going to come back with a gun. [*Id.* at] 91. Singh believed [Appellant] made this statement twice. [*Id.*] Singh then called 911. [*Id.*] Singh also suggested [Appellant] run the card as a debit; [Appellant] agreed, but the card was still declined. [*Id.* at] 93-94. Singh even offered some of his own change. [*Id.* at] 94. Singh offered to try $20.00 instead of $30.00 on the card and [Appellant] said no. [*Id.*] At one point, [Appellant] lifted his shirt to reference the gun and said,

---

[2] Singh testified that standing behind the register provides [him] with a good vantage point to see everything in the store and outside. [*Id.* at] 77.

"you're lucky guys, I don't have it on me, it's in the car." [*Id.* at] 95. [Appellant] then left the store. [*Id.* at] 96. Singh grabbed his keys and locked the main doors facing the pumps and the doors in the back of the building as well. [*Id.* at] 96-97. Singh, Park, and Lawson [went] in the back corner of the store by the bathroom and the office. [*Id.* at] 139-40. The Marathon Gas Station also has video surveillance cameras installed in the store, which recorded the previously discussed incidents, and corresponds to Singh's testimony. [*Id.* at] 113-14, 133-42. One of the videos further shows [Appellant] parked in a red van at a pump asking to buy the gas. [*Id.* at] 140. Another video depicts [Appellant], once police arrived, attempting to run through the building by pulling on the doors, but they would not open since they were locked. [*Id.* at] 142. Singh stated that it looked like [Appellant] fired something because the glass was shattered. [*Id.*]

At approximately 8:05 p.m., Officer Brian Sadlowe (hereinafter "Officer Sadlowe") received a radio communication that a man with a gun was at the Marathon Gas Station. [*Id.* at] 163-66. Officer Matthew Mastorovich (hereinafter "Officer [Mastorovich]") and Officer Hart were also present for this communication. [*Id.* at] 165-66. Shortly before Officer Sadlowe arrived on the scene, the dispatcher informed him that shots had been fired. [*Id.* at] 170. Officer Sadlowe arrived at the scene through the back side of the Marathon Gas Station and pulled into the parking lot, parking at an angle. [*Id.*] Officer Sadlowe observed an arm from the back side of the van emerge between the gas pumps and the van, saw the gun, heard two (2) shots, and saw the two (2) gun flashes. [*Id.*] at 171. Officer Sadlowe testified that he didn't know who [Appellant] was firing at until he saw Officer Mastorovich's vehicle behind his to the left. [*Id.*] at 171-72. Officer Sadlowe testified that the gun was being fired in the direction of Officer Mastorovich who was still in his vehicle. [*Id.* at] 173. At this point, Officer Sadlowe ran to the back side of his vehicle to take cover. [*Id.* at] 174. Officer Sadlowe then yelled to [Appellant] to drop the gun, at least four (4) to five (5) times. [*Id.* at] 175. A white pick-up truck pulled into the station but then left. [*Id.* at] 176-77. After the vehicle left, Officer Sadlowe heard a loud bang and witnessed [Appellant] running from the front of the van, across the parking lot, and towards the front door of the convenience store with a gun in his hand. [*Id.* at] 177-78. At this time, Officer Sadlowe fired his weapon and discharged three (3) bullets. [*Id.* at] 178-79. Officer Mastorovich was also firing at this time. [*Id.* at] 180. As [Appellant] was

reaching for the door handle, Officer Sadlowe saw [Appellant] turn to the left, [Appellant's] knees buckled, and [Appellant] fell to the ground and rolled onto his back. [*Id.*] [Appellant] then put his hands up in the air. [*Id.*] Officer Sadlowe approached [Appellant,] and he and Officer Mastorovich secured him. [*Id.* at] 180-81. Officer Sadlowe could see that [Appellant] had been shot. [*Id.* at] 181. Officer Sadlowe saw a revolver lying on the ground next to [Appellant]. [*Id.*]

Officer Mastorovich testified regarding his involvement with the incident on April 20, 2016. [*Id.* at] 249-52. Officer Mastorovich corroborated the majority of Officer Sadlowe's testimony. [*Id.* at] 251-75. As Officer Mastorovich was arriving at the parking lot, he saw a red mini-van in front of him and then saw [Appellant] raise a gun to level and fire two (2) shots at him. [*Id.* at] 256. Specifically, Officer Mastorovich testified that [Appellant] fired two (2) shots at him, and Officer Mastorovich saw two (2) distinct muzzle flashes coming from the gun. [*Id.* at] 256. At this time, Officer Mastorovich ducked down, put his vehicle in reverse, exited his vehicle, drew his weapon, and positioned himself to the rear of the tailgate of the right-hand side of the vehicle. [*Id.* at] 258. Officer Mastorovich testified that both his and Officer Sadlowe's vehicles were marked police vehicles. [*Id.* at] 263. Officer Mastorovich then observed [Appellant] exit his vehicle with a gun in his hand and run towards the store. [*Id.* at] 265. At this time, Officer Mastorovich fired five (5) times at [Appellant], and observed [Appellant] being hit by gunfire. [*Id.* at] 267. Officer Mastorovich was not sure whose shot struck [Appellant] since he and Officer Sadlowe were both firing at [Appellant]. [*Id.*] After Officer Mastorovich fired, he saw [Appellant's] hands at the door, attempting to get into the store. [*Id.* at] 268. Officer Mastorovich observed that [Appellant] was still carrying a gun at this time. [*Id.* at] 269. After the shots were fired, [Appellant] staggered and fell. [*Id.*] Once the Officers noticed [Appellant] was bleeding, they called for an ambulance. [*Id.* at] 270-71. Officer Mastorovich noticed a black revolver lying in the vicinity of [Appellant]. [*Id.* at] 272.

[Appellant] testified that Singh initially asked [Appellant] if he had a gun on his person because Singh thought [Appellant] had a gun when he first entered the store. [*Id.* at] 522. [Appellant] testified that he said that he did not have the gun on his person but that he had one in the van. [*Id.*] [Appellant] testified that Singh then picked up his phone. [*Id.*] [Appellant] asked if he could turn the pump on when he arrived at the pump,

and Singh stated that he had to call his manager to ask. [*Id.*] [Appellant] stated that Singh said, "is it money you want," and then opened the drawer and placed a handful of change on the counter. [*Id.* at] 524. [Appellant] testified that he left the money on the counter and left the store. [*Id.*] Regarding the shooting, [Appellant] testified that he never had any intention to shoot a gun at a police officer. [*Id.* at] 525. Specifically, [Appellant] stated that, as he was looking for a bag of change in his vehicle, he heard some gunshots, and as he looked up, he saw police officers, and subsequently heard two (2) more distinct gunshots. [*Id.* at] 526. [Appellant] stated that he ran to the front door of the convenience store to get to a safer place. [*Id.* at] 529. [Appellant] testified that he did not discharge his firearm in the direction of the police. [*Id.* at] 530. [Appellant] does not recall discharging his firearm at all. [*Id.*] [Appellant] stated that, as soon as he heard gunshots and the dull thud, he panicked. [*Id.*]

Trial Court Opinion, filed 9/11/17, at 2-5 (footnote omitted).

At the conclusion of all testimony, the jury convicted Appellant of the offenses indicated *supra*, and on July 6, 2017, Appellant proceeded to a sentencing hearing, at the conclusion of which the trial court sentenced him to an aggregate of twenty years to forty years in prison. Appellant did not file a post-sentence motion; however, on July 26, 2017, he filed the instant timely notice of appeal. The trial court directed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), Appellant timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues:

I.    Was the jury verdict against the sufficiency of the evidence as to Count 7, Robbery F-1, in that the [*sic*] it was not proven beyond a reasonable doubt the robbery was committed during the course of committing a theft?

II.   Was the jury verdict against the sufficiency of the evidence as to Counts 11 through 14, recklessly endangering another

- 5 -

person. . .in that [Appellant] was not aware of the presence of other individuals during the alleged commission of his crimes?

III. Whether [the trial court judge] abused her discretion by denying Appellant's motion for judgment of acquittal regarding the Count of robbery, and Counts 11, 13 and 14 of [recklessly endangering another person].

Appellant's Brief at 7.

In his first issue, Appellant contends the evidence was insufficient to sustain his conviction for robbery.

We begin by noting our standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Storey*, 167 A.3d 750, 757 (Pa.Super. 2017) (citations omitted).

Appellant was convicted of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii), which provides:

- 6 -

**§ 3701. Robbery**

 **(a) Offense defined.**--

> (1) A person is guilty of robbery if, in the course of committing a theft, he:

> ***

> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii) (bold in original).

In the case *sub judice*, Appellant challenges the statutory language "in the course of committing a theft[.]" Specifically, he contends the evidence is insufficient to sustain his robbery conviction because there is no evidence he committed a theft. We find no relief is due.

This Court has held that "[a] conviction for robbery does not require proof of a completed theft." ***Commonwealth v. Robinson***, 936 A.2d 107, 110 (Pa.Super. 2007). Rather, the Crimes Code defines "in the course of committing a theft" to include an act occurring "in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2). ***See Robinson***, 936 A.2d at 110. An attempted theft is committed when a person, with intent to commit a theft, does any act which constitutes a substantial step toward commission of the theft. ***Commonwealth v. Ennis***, 574 A.2d 1116 (Pa.Super. 1990). The Crimes Code provides that "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

In the case *sub judice*, assuming, *arguendo*, the Commonwealth failed to prove Appellant completed a theft, we agree with the trial court that the Commonwealth sufficiently proved Appellant attempted to commit a theft. The evidence reveals that Appellant threatened to bring a gun into the store if Singh did not permit him to pump $30.00 worth of gas into his vehicle. Appellant then went outside and placed the nozzle of the gas pump into his vehicle.

We agree with the trial court that "the jury [was] free to believe [Appellant] removed the hose and nozzle and placed it into his vehicle to attempt to pump gas, and further that [Appellant] attempted to take gas based on the threat he made to Singh[.]" Trial Court Opinion, filed 9/11/17, at 6. Accordingly, the Commonwealth proved beyond a reasonable doubt that Appellant, with the intent to take property from the convenience store and deprive the store of the property, took a substantial step toward those ends, and thus, the evidence was sufficient to prove the "in the course of committing a threat" element of robbery. **See Commonwealth v. Sanchez**, 614 Pa. 1, 36 A.3d 24, 41 (2011) ("That circumstances made it such that [the] appellant and his accomplices failed to obtain and remove money (or other valuables) is irrelevant because proof of an attempted theft is sufficient to establish the 'in the course of committing a theft' element of robbery.").

In his second issue, Appellant contends the evidence was insufficient to sustain his conviction for recklessly endangering another person ("REAP") as

- 8 -

to Mrs. Issa, Mr. Issa, Lawson, and Park. Specifically, he claims that he was not aware the individuals were in the store during the commission of his crimes, and therefore, he did not have the requisite *mens rea* for REAP as to these individuals. We find no relief is due.

Pursuant to the Crimes Code, REAP is defined as "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

> To sustain a conviction under section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The *mens rea* for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person. Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death.

***Commonwealth v. Hopkins***, 747 A.2d 910, 915–16 (Pa.Super. 2000) (quotations marks, quotation, and emphasis omitted).

In rejecting Appellant's sufficiency claim, the trial court relevantly indicated the following:

> The jury heard testimony that [Appellant] recklessly engaged in conduct when he, knowing people were in the store because he had just exited the store, and knowing that the police were firing at him [in response to him first firing at the police], ran towards the store, which caused the police to fire towards the store[.] The jury heard testimony that, when [Appellant] was inside the store, [Appellant] lifted his shirt to reference the gun and said, "you're lucky guys, I don't have it on me, it's in the car." The jury also saw a video that depicted [Appellant] attempting to run through the building by pulling on the doors, but they were

- 9 -

locked. The jury further heard testimony that Officer Sadlowe witnessed [Appellant] running from the front of the van, across the parking lot, and towards the front door of the convenience store with a gun in his hand. At this time, Officer Sadlowe fired his weapon and discharged three (3) bullets. Officer Mastorovich was also firing at this time.

Trial Court Opinion, filed 9/11/17, at 7 (citations to record omitted).

Further, we note the record reveals that Park and Lawson were near the store's counter when Appellant spoke to Singh. N.T., Apr. 3-7, 2017, at 75-76, 138-39. Also, Mr. and Mrs. Issa were working at their business, which is located inside the store. *Id.* at 75-76. Thus, the jury could reasonably infer that Appellant was aware of the individuals in the store. Alternatively, the jury could reasonably infer Appellant consciously disregarded the fact customers and employees may be inside of the store during the commission of his crimes. Thus, Appellant is not entitled to relief on this claim.

In his final claim, Appellant avers the trial court abused its discretion in denying Appellant's motion for judgment of acquittal as to one count of robbery and three counts of REAP.[3] Inasmuch as Appellant premises his final

---

[3] Appellant specifically claims:

Appellant believes the request for acquittal [made] at the close of the Commonwealth's case should have been granted as to the Robbery since the Commonwealth failed to meet its burden to establish the elements. As to the multiple REAP counts, [A]ppellant believes the motion should have been granted since [A]ppellant's mens rea should have been considered.

Appellant's Brief at 13.

- 10 -

claim upon his sufficiency of the evidence claims rejected *supra*, we find no relief is due.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2018