COMMONWEALTH of Pennsylvania, Appellee,

v.

John Sheppard PAYNE, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 3, 2005.
Filed Feb. 15, 2005.

Scott B. Rudolf, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Amy E. Constantine, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: HUDOCK, KLEIN, and OLSZEWSKI, JJ.

### Facts

OPINION BY OLSZEWSKI, J.:

¶ 1 On a fine April afternoon in 2002, Marion Haston drove through Pittsburgh's Oakland neighborhood and caught sight of Purdi Featherstone, an old acquaintance of his, sitting on her 207 Dunseth Street porch. Mr. Haston parked his van at the end of the block and walked up to see how Ms. Featherstone was getting along in life. The two talked for a while when, all of a sudden, Mr. Haston was confronted with a fearful sight; as Mr. Haston testified, "I turned my head to look down the street a second, looked back up, and I was staring down two [gun] barrels." N.T. Trial, 10/30–31/03, at 68.[1] Appellant, standing

---

1. Appellant's trial spanned two days. The record does not, however, specify where one day ends and the next begins.

about two feet away from Mr. Haston, held both of these guns and, as Mr. Haston testified, both guns "appeared to be .22 caliber semi-automatic." N.T. Trial, 10/30–31/03, at 70.

¶ 2 Now that appellant had Mr. Haston's attention, he "[d]emanded [Mr. Haston's] money...[Said] he was starving, didn't eat in a couple days. Just demanded the money." N.T. Trial, 10/30–31/03, at 69. Mr. Haston (apparently) did nothing, forcing appellant to place both guns in one hand and use his free hand to "rummage around" in Mr. Haston's pockets. Mr. Haston, however, swatted at appellant's hands and took a step backwards. Appellant took issue; he fired a couple of shots at the ground, pointed the guns back at Mr. Haston and asked whether Mr. Haston "wanted to get shot." N.T. Trial, 10/30–31/03, at 72.

¶ 3 Yet, something distracted appellant and made him turn around. At this point, Mr. Haston took off running. Even though a gunshot rang out behind him, Mr. Haston continued to run until he reached a business, Breachmenders, Ministries. As Mr. Haston testified, inside Breachmenders "there was a gentleman behind the desk. He began arguing with me. So immediately I started to turn around and go out the door and they told me the back of my shirt was bloody. So at that point I realized I was shot." N.T. Trial, 10/30–31/03, at 76. Mr. Haston then passed out of consciousness and was taken to the hospital.

¶ 4 The doctors saved Mr. Haston's life even though the bullet passed through his body and lodged deep within his liver, so deep, in fact, that the bullet could not be extracted. Yet, and while Mr. Haston did "suffer[ ] serious and life-threatening" injuries, he was also extraordinarily lucky: according to the trauma surgeon, the bullet passed within a few millimeters of de-stroying his kidney. More importantly, however, Mr. Haston was

> fortunate that within millimeter of distance the bullet had not compromised the portal vein or the inferior vena cava. Should that have been the case, he probably would not have arrived alive to the hospital because of the magnitude of the hemorrhage should the venous structures have been injured it would have been severe.

N.T. Trial, 10/30–31/03, at 24.

¶ 5 The police began investigating at once and found a spent .22 caliber cartridge casing on the sidewalk in front of 205 Dunseth Street. Ms. Featherstone (who, it will be remembered, lived at 207 Dunseth) gave the police a description of the gunman and told the officers that the shooter was a man from the neighborhood she knew as "J.P." These tips allowed the police to create a photo-array and, as Detective Weismantle testified, "I just showed [Mr. Haston] the array, handed it to him and he immediately picked out" appellant. N.T. Trial, 10/30–31/03, at 129.

¶ 6 The jury found appellant guilty of robbery, aggravated assault, and firearms not to be carried without a license; he was then sentenced to serve seven to fifteen years in prison for robbery, with a consecutive imprisonment term of six to thirteen years for aggravated assault to follow. He has now appealed, first arguing that insufficient evidence existed to support his aggravated assault conviction and, second, that aggravated assault is a lesser-included offense of robbery.

### Analysis

¶ 7 Since appellant challenges the sufficiency of the evidence we, as an appellate court, must "view all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner." *Common-*

*wealth v. Small*, 559 Pa. 423, 741 A.2d 666, 671 (1999). It neither is nor could it be our job to judge a witness's credibility, resolve conflicts in testimony, or weigh the evidence; these important tasks are left to the fact-finder. Rather, what we must determine is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). If this test is satisfied, the convictions must stand: the accused was found guilty after having received his or her due process of law.

¶ 8 Appellant attacks the evidentiary sufficiency supporting his aggravated assault conviction. In this case, before the jury could find appellant guilty of aggravated assault, it had to first find, beyond a reasonable doubt, that appellant "caused serious bodily injury to [the victim,] Marion Haston...[and, that appellant] acted intentionally and/or knowingly or recklessly and under circumstances manifesting extreme indifference to the value of human life." N.T. Trial, 10/30–31/03, at 208–09. In appellant's view, the Commonwealth proved only that Mr. Haston suffered serious bodily injury; as he states, there was insufficient evidence to prove:

(1) that Appellant, rather than another person in the vicinity, was the person that shot the complainant; (2) that Appellant, assuming he was the person that shot the complainant, did so via voluntarily discharging his weapon; and (3) that Appellant, assuming that he voluntarily fired his weapon and his shot wounded the complainant, acted with the mental state required for Serious Injury Aggravated Assault.

Appellant's Brief, at 11–12. Our standard of review has, however, rendered appellant's attack impotent; his trident does not pierce the body of his conviction.

¶ 9 The first prong in appellant's attack questions the Commonwealth's proof as to the shooter's identity. He argues the prosecution "failed to prove that Appellant, rather than some other person who was nearby, was the person who shot the complainant." Appellant's Brief, at 17. But appellant forgets that

[p]roof by eye witnesses or direct evidence of the *corpus delicti* or of identity or of the commission by the defendant of the crime charged is not necessary. It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt.

*Commonwealth v. Gooslin*, 410 Pa. 285, 189 A.2d 157, 158 (1963).

¶ 10 Here, the Commonwealth presented "direct" evidence that appellant approached Mr. Haston at 207 Dunseth Street with two drawn guns, both of which "appeared to be .22 caliber semi-automatic." N.T. Trial, 10/30–31/03, at 70. Appellant then demanded Mr. Haston's money and, when rebuffed, fired a couple of shots at the ground, pointed the guns back at Mr. Haston and asked whether Mr. Haston "wanted to get shot." Further, Mr. Haston heard a gunshot right after he took off running and later found that he had been shot in the back with a bullet. Added to this is the .22 caliber cartridge casing the police found on the sidewalk immediately in front of 205 Dunseth.

¶ 11 Looking at the evidence in the light most favorable to the Commonwealth, it takes an inferential baby-step to conclude that appellant fired the shot; the argument that "any one of the myriad of people who were nearby...could have been the shooter" was one for the jury, not us. Appellant's Brief, at 17.

¶ 12 The final two prongs of appellant's "sufficiency of the evidence" argument are better viewed together. He claims evidentiary insufficiency for his aggravated assault conviction since the Commonwealth never proved he: (1) "voluntarily" pulled the handgun's trigger or (2) acted with the required *mens rea.* Our standard of review again thwarts appellant's attack.

¶ 13 First off, there was sufficient evidence to prove appellant acted with the specific intent to cause Mr. Haston's serious bodily injury. As we have stated: "with respect to the intent requirement...we examine the defendant's words and conduct to determine whether the record supports a finding of the requisite intent." *Commonwealth v. Gruff,* 822 A.2d 773, 780 (Pa.Super.2003). In this case, appellant not only approached Mr. Haston with two guns pointed at Mr. Haston's face, but when Mr. Haston challenged appellant's "authority" appellant fired shots into the ground and rhetorically asked whether Mr. Haston "wanted to get shot." That appellant then acted on his threat, shooting Mr. Haston in his back, amply supports a finding that appellant subjectively intended to cause Mr. Haston serious bodily injury.

¶ 14 At any rate, the Commonwealth was not required to prove appellant acted with the "specific intent" to cause Mr. Haston's injuries: this is not a case where appellant "attempted" to cause Mr. Haston serious bodily injury; rather, here appellant *actually caused* serious bodily injury. According to statute, aggravated assault is committed when a person "attempts to cause serious bodily injury to another, *or causes* such injury intentionally, knowingly *or recklessly under circumstances manifesting extreme indifference to the value of human life.*" 18 Pa.C.S. § 2702(a)(1) (emphasis added). Since appellant actually caused Mr. Haston "seri-

ous bodily injury," the Commonwealth, at a minimum, had to prove that appellant caused these injuries "recklessly under circumstances manifesting extreme indifference to the value of human life." *Id.* In other words, the Commonwealth had to prove that appellant acted with malice. *Commonwealth v. McHale,* 858 A.2d 1209, 1213 (Pa.Super.2004).

¶ 15 To prove malice, "it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Kling,* 731 A.2d 145, 148 (Pa.Super.1999). This state of mind may be inferred "from conduct, recklessness of consequences, or the cruelty of the crime." *Commonwealth v. Malone,* 354 Pa. 180, 47 A.2d 445, 447 (1946). In following, under our caselaw, we have extraordinarily well established precedent stating that if a gun discharges and the bullet strikes the victim, the intentional act of pointing the gun and aiming it at a vital part of the human body creates the presumption of malice. *Malone,* 47 A.2d at 449; *Commonwealth v. Durant,* 456 Pa. 416, 319 A.2d 675 (1974); *Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981); *Commonwealth v. Seibert,* 424 Pa.Super. 242, 622 A.2d 361 (1993). This is true regardless of whether the shooter was unaware the gun was loaded, regardless of whether the shooter only meant to "scare" the victim, regardless of whether the gun accidentally discharged, regardless of whether the shooter and victim were good friends.

¶ 16 Under the facts of our case, it is thus irrelevant whether appellant's gun accidentally discharged: the Commonwealth proved appellant aimed the gun at Mr. Haston's torso and fired a shot. These actions "almost assure[d]" Mr. Haston's death; indeed, as the trauma surgeon's

testimony showed, the fact that Mr. Haston did not die was just blind luck. The Commonwealth thus established every single element required to convict appellant of aggravated assault.[2]

¶ 17 Finally, appellant argues that his aggravated assault conviction merged with his robbery conviction for sentencing purposes. He states that "Serious Injury Robbery [18 Pa.C.S. § 3701(a)(1)(i)] is...the greater offense, and Serious Injury Aggravated Assault [18 Pa.C.S. § 2702(a)(1)] is a lesser included offense." Appellant's Brief, at 32. We disagree: "all of the statutory elements" of aggravated assault offense are **not** incorporated into the robbery offense. Namely, and as opposed to robbery, aggravated assault requires the individual to act with a specific mental state when inflicting the "serious bodily injury."[3,4]

¶ 18 Before we tackle the merger issue, we must first determine the specific robbery provision under which appellant was sentenced. As appellant correctly notes, there is "ambiguity in the jury's verdict as to whether they voted to convict Appellant of Serious Injury Robbery under § 3701(a)(1)(i) or of Physical Menace Robbery under § 3701(a)(1)(ii). This ambiguity arises because the jurors were instructed on both variants...and returned only a verdict indicating that they had found Appellant 'guilty of robbery.'" Appellant's Brief, at 28. The difference is indeed important since the offense gravity score affixed to a § 3701(a)(1)(i) robbery is higher than for the § 3701(a)(1)(ii) variety.[5] For our purposes, however, the answer is elementary: the trial judge made it clear that appellant was being sentenced under § 3701(a)(1)(i).[6] We will now determine whether appellant could be sentenced for violating both 18 Pa.C.S. § 3701(a)(1)(i) (inflicting "serious bodily injury" during a theft) and 18 Pa.C.S. § 2702(a)(1) (causing serious bodily injury "intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life").

¶ 19 Appellant's merger argument is greatly dependent upon *Commonwealth v. Ennis*, a case that, factually speaking, is directly on point. 394 Pa.Super. 1, 574 A.2d 1116 (1990). In *Ennis*, the defendant attempted to steal from his victim and, during the attempt, shot the victim in the stomach. As in the current case, Ennis was convicted and sentenced for violating both the § 3701(a)(1)(i) robbery and § 2702(a)(1) aggravated assault provisions; and, again as in the current case, the one act of criminal violence (shooting the victim) established the "serious bodily injury"

---

**2.** Appellant declares that "[f]or all this court knows" Mr. Haston's bullet wound occurred when "Appellant shot into unoccupied ground as he had before, or fired into the air." On the contrary, since we view the evidence in the light most favorable to the Commonwealth, we now *know* that appellant pointed his gun at Mr. Haston and fired a bullet into his back. The question of whether this was a magic bullet was, again, for the jury.

**3.** 18 Pa.C.S. § 3701(a)(1)(i) states that "[a] person is guilty of robbery if, in the course of committing a theft, he...inflicts serious bodily injury upon another."

**4.** As has been already stated, appellant was convicted of aggravated assault under 18 Pa.

C.S. § 2702(a)(1) for "caus[ing]...serious bodily injury to another...intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

**5.** A § 3701(a)(1)(i) violation fixes the offense gravity score at 12; violating § 3701(a)(1)(ii) carries with it an offense gravity score of 10.

**6.** At sentencing, the judge explicitly stated that appellant's "robbery offense gravity score is a 12." N.T. Sentencing, 1/15/04, at 3. Appellant was thus sentenced under 18 Pa.C.S. § 3701(a)(1)(i).

element for both the § 3701(a)(1)(i) robbery and § 2702(a)(1) aggravated assault convictions. On appeal, Ennis argued it was error for the court to sentence him for § 2702(a)(1) aggravated assault since that offense was subsumed by § 3701(a)(1)(i) robbery. We agreed with Ennis and reversed. In quoting from our Supreme Court's *Commonwealth v. Weakland* opinion, we stated that the essence of the merger doctrine was as follows:

> If a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Ennis,* 574 A.2d at 1123 *(quoting Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228, 1233 (1989)).

¶ 20 Using this test, we declared that since "[t]he aggravated assault was established by appellant's act of shooting [the victim] in the stomach" and since that "same act established an element of the robbery offense, i.e., the infliction of serious bodily injury upon another", the aggravated assault offense was merged into the robbery offense. *Ennis,* 574 A.2d at 1123–24.

¶ 21 The merger test upon which *Ennis* relied was, however, "flawed": it was too simplistic and encompassed too much. *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 23 (1994) *(stating:* "our analysis was flawed...we...abrogate the holding in *Weakland* "). As our Supreme Court later clarified, the question was not simply whether a criminal "committed one act or many." Rather, the important question is whether "each offense requires proof of a fact which the other does not"; if this test is satisfied, there is no merger. *Anderson,* 650 A.2d at 23. Thus, and in following, merger cannot occur unless two criteria are met: first, the crimes must "arise from a single criminal act"; and second, "all of the statutory elements of one offense [must be] included in the statutory elements of the other offense." 42 Pa.C.S. § 9765.

¶ 22 In the current case, while "one criminal act" caused appellant to offend both the aggravated assault and robbery statutes, it is clear that aggravated assault under § 2702(a)(1) requires an element that § 3701(a)(1)(i) robbery does not: namely, that the perpetrator act with a specific mental state when causing the "serious bodily injury." As § 2702(a)(1) declares, before an individual may be convicted of aggravated assault, that individual must "cause[ ]...serious bodily injury to another...*intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.*" 18 Pa.C.S. § 2702(a)(1). 18 Pa.C.S. § 3701(a)(1)(i) simply does not require such a mental state when the "serious bodily injury" is inflicted. For robbery, it is enough that the perpetrator "*inflicts* serious bodily injury upon another" while "in the course of committing a theft." 18 Pa.C.S. § 3701(a)(1)(i)(emphasis added).

¶ 23 In conclusion, we quote from our Supreme Court: "[t]hus[ ] the crimes do not merge, for robbery requires proof of theft, which aggravated assault does not, and aggravated assault as a felony of the first degree requires proof of circumstances manifesting extreme indifference to the value of human life, which robbery does not." *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632, 635 (1996). We affirm appellant's judgment of sentence.

¶ 24 Judgment of sentence AF-FIRMED.

¶ 25 KLEIN, J., Concurs in the Result.