J-S83039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAHMIR MORRISON | : | |
| | : | |
| Appellant | : | No. 735 EDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014597-2013

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 09, 2018**

Appellant, Dahmir Morrison, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of three counts of attempted murder, one count of conspiracy to commit murder, three counts of aggravated assault, and one count each of firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime ("PIC").[1] We affirm the convictions but vacate the judgment of sentence and remand for resentencing.

In its opinion, the trial court fully and accurately sets forth the relevant

_____

[1] 18 Pa.C.S.A. §§ 901(a), 903(c), 2702(a), 6106(a), 6108, and 907(a), respectively.

facts and procedural history of this case. Therefore, we have no need to restate them. We add the court sentenced Appellant on October 15, 2015, to an aggregate term of eleven (11) to twenty-two (22) years' incarceration, which included concurrent terms of nine (9) to eighteen (18) years' incarceration each for the attempted murder and conspiracy to commit murder convictions.

Appellant raises two issues for our review:

> DID THE TRIAL COURT ERR IN SENTENCING APPELLANT ON ATTEMPTED MURDER AND CONSPIRACY TO [COMMIT] MURDER IN VIOLATION OF 18 PA.C.S.A. SECTION 906[?]
>
> WAS THE EVIDENCE INSUFFICENT TO SUSTAIN A CONVICTION FOR ATTEMPTED MURDER, AGGRAVATED ASSAULT, CRIMINAL CONSPIRACY [TO COMMIT MURDER], VUFA, AND PIC?

(Appellant's Brief at 3).

In his first issue, Appellant argues his convictions for attempted murder and conspiracy to commit murder stemmed from conduct designed to culminate in the commission of the same crime. Appellant maintains the court improperly imposed a concurrent sentence of nine to eighteen years' imprisonment on both the attempt and the conspiracy convictions. Appellant concludes the sentence is illegal, and this Court must vacate the judgment of sentence. We agree.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v.***

*Nero*, 58 A.3d 802, 806 (Pa.Super. 2012), *appeal denied*, 621 Pa. 655, 72 A.3d 602 (2013). "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v. Poland*, 26 A.3d 518, 523 (Pa.Super. 2011), *appeal denied*, 614 Pa. 702, 37 A.3d 1195 (2012).

Section 906 of the Crimes Code provides:

> **§ 906.  Multiple convictions of inchoate crimes barred**
>
> A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.

18 Pa.C.S.A. § 906.  In this context, "[w]hen the law speaks of a 'conviction,' it means a **judgment**, and not merely a **verdict**, which in common parlance is called a conviction." *Commonwealth v. Maguire*, 452 A.2d 1047, 1049 (Pa.Super. 1982) (emphasis in original). "When a trial court is faced with a jury verdict of guilty of more than one inchoate crime, it is required by Section 906 to render a judgment of sentence for no more than one of those crimes." *Id.* at 1050. "[I]nchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Commonwealth v. Graves*, 510 Pa. 423, 424, 508 A.2d 1198, 1198 (1986).  Section 906 "is designed to eliminate multiple…judgments of sentence for conduct which constitutes

- 3 -

preparation for a single criminal objective." ***Commonwealth v. Grekis***, 601 A.2d 1284, 1295 (Pa.Super. 1992). ***But see Commonwealth v. Jacobs***, 614 Pa. 664, 39 A.3d 977 (2012) (holding appellant's sentences for attempt to escape and conspiracy to commit escape from prison did not merge under Section 906, where conspiracy conviction was based on joint plan to escape, while attempt to escape conviction involved several distinct escape attempts).

In this context, "[W]here the trial court has erroneously…sentenced an appellant for two inchoate crimes, the remedy has been either to amend the sentence…or to remand for resentencing for either one or the other." ***Maguire, supra*** at 1050. ***See also In Interest of Mark C.***, 489 A.2d 887 (Pa.Super. 1985) (holding when trial court errs by sentencing appellant on both inchoate crimes, appellate court has option either to remand for resentencing or to amend sentence directly); ***Commonwealth v. Watts***, 465 A.2d 1267 (Pa.Super. 1983) (vacating appellant's judgment of sentence for one inchoate crime and affirming judgment of sentence for other crime, where trial court imposed concurrent sentences on each conviction).

Instantly, the offenses of attempted murder and conspiracy to commit murder were directed toward and culminated in the same criminal act, corralling and shooting at Victims. ***See*** 18 Pa.C.S.A. § 906. The court sentenced Appellant to concurrent sentences on each of his inchoate offenses, attempt and conspiracy. Appellant's judgment of sentence is

- 4 -

illegal. *See Maguire, supra*; 18 Pa.C.S.A. § 906. Accordingly, we vacate the judgment of sentence in its entirety and remand for resentencing. *See Commonwealth v. Bartrug*, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (holding sentencing error on one count in multi-count case generally requires all sentences for all counts to be vacated so court can restructure entire sentencing scheme). *See also Commonwealth v. Goldhammer*, 512 Pa. 587, 593, 517 A.2d 1280, 1283 (1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987)) (stating generally if appellate court alters overall sentencing scheme, then remand for re-sentencing is proper).[2]

With respect to Appellant's second issue,

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless

---

[2] The Commonwealth agrees separate sentences on the inchoate offenses is impermissible but insists we should simply vacate a sentence on one of the inchoate offenses, because they were imposed concurrently, and affirm the judgment of sentence in all other respects. The present case, however, involves multiple counts; and the court's sentencing error on one count generally requires all sentences for all counts to be vacated so the court can restructure the entire sentencing scheme. *See Bartrug, supra*. Thus, we decline to follow the Commonwealth's recommendation.

the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120–21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Diana L. Anhalt, we conclude Appellant's second issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed March 17, 2017, at 5-16) (finding: evidence established that minutes before shooting, one Victim bumped into Appellant and three co-conspirators in restaurant; Appellant and his cohorts then rode bicycles past all three Victims twice; two individuals on bicycles then restrained all three Victims' movement while two others shot at all three Victims; Appellant and cohorts aimed at and fired at least 13 rounds in direction of all three Victims; Appellant's use of deadly weapon on Victims showed intent to kill sufficient to support Appellant's convictions for attempted murder; evidence was sufficient to convict

Appellant of aggravated assault, notwithstanding Appellant's attempted murder convictions, where one Victim sustained serious bodily injury from gunshot wounds; firing multiple rounds in direction of Victim constituted reckless behavior manifesting extreme indifference to value of human life; further, Appellant and his cohorts fired multiple rounds in direction of all three Victims, demonstrating intent to cause serious bodily injury to all Victims; regarding Appellant's conspiracy to commit murder conviction, Appellant and co-conspirators on bicycles twice circled Victims before shooting; Appellant and cohorts approached and fled scene together; authorities recovered two distinct shell casings from scene, indicating shooters had used two separate guns; one Victim saw Appellant and co-conspirators together at restaurant minutes before shooting; shooting at Victims constituted overt act and established, at least, disregard of great risk of inflicting death or serious bodily harm upon all Victims; therefore, evidence was sufficient to convict Appellant of conspiracy; concerning Appellants' VUFA convictions, witness testimony established Appellant possessed firearm in public while in Philadelphia; Victims saw Appellant carrying gun at restaurant prior to shooting; also, Commonwealth provided certificate of non-licensure, indicating Appellant lacked license to carry firearm on date of shooting; concerning Appellant's PIC conviction, testimony established Appellant discharged firearm at Victims; therefore, evidence was sufficient to convict Appellant of PIC).  Accordingly, we affirm

Appellant's convictions, based on the trial court opinion, but we vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/18



IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL DIVISION TRIAL



| COMMONWEALTH | : | NO.: CP-51-CR-0014597-2013 |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | **Superior Court No.:** |
| | : | **735 EDA 2016** |
| DAHMIR MORRISON | : | |

CP-51-CR-0014597-2013 Comm. v. Morrison, Dahmir
Opinion

## OPINION

**ANHALT, J.**

Appellant in the above-captioned matter appeals this Court's judgment regarding his conviction for three counts of Criminal Attempt – Murder of the First Degree, 18 Pa.C.S.A. § 901(a), three counts of Aggravated Assault, 18 Pa.C.S.A. § 2702(a), Conspiracy – Murder of the First Degree, 18 Pa.C.S.A. § 903, Firearms not to be carried without a license ("VUFA 6106"), 18 Pa.C.S.A. § 6106(a)(1), Carrying firearms on public streets or public property in Philadelphia ("VUFA 6108"), 18 Pa.C.S.A. § 6108 and Possessing instruments of crime ("PIC"), 18 Pa.C.S.A. § 907(a). The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the Court holds that the judgment of conviction should be affirmed.

## PROCEDURAL HISTORY

On July 9, 2013, police arrested and charged Appellant, Dahmir Morrison with numerous offenses stemming from a shooting incident that occurred on July 6, 2013. On January 29, 2015, this Court denied Appellant's Motion to Suppress identification via photo array. Following a jury trial before this Court, on February 2, 2015, a jury found Appellant guilty of three counts of Attempted Murder (H1), three counts of Aggravated Assault (F1), Conspiracy to Commit

Murder (H1), VUFA 6106 (F3), VUFA 6108 (M1) and PIC (M1). On October 15, 2015, this Court sentenced Appellant to an aggregate sentence of 11-22 years of incarceration.

Appellant filed a timely notice of appeal on March 7, 2016. On March 30, 2016, this Court allowed Francis William McCloskey Jr., Esq. to withdraw as counsel. On November 2, 2016, Michael P. Marryshow, Esq. was appointed as counsel. On November 2, 2016, this Court ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. On November 22, 2016, Appellant filed a Statement of Errors Complained of on Appeal. Appellant raises the following issues on appeal:

1. The evidence was insufficient to sustain a conviction for three counts of criminal attempt-murder of the first degree, three counts of aggravated assault, conspiracy, VUFA and PIC, where there was no reliable in-court identification and the evidence was so unreliable and contradictory that the trier of fact could not have legally convicted defendant of the charges.
2. The lower court erred in failing to grant the motion to suppress the out of court identification where the police detectives influenced the complainants to select defendant in the photo array identification as the shooter, where complainant Bowman testified that it was dark outside, that the incident was over within seconds, that he had his back to the shooter and that he did not see the shooter's face and could only describe his clothing.

## FACTUAL HISTORY

On July 6, 2013, Demetrius Bowman, Marquieta Johnson and Hakeem Keith all sat on the corner of 67th and Carlisle Streets. Notes of Testimony (N.T.) 1/29/15 at 174. They then walked to the Chinese take-out store a few blocks away. *Id.* Mr. Keith went inside the Chinese take-out store while Ms. Johnson and Mr. Bowman waited outside. *Id.* While entering the store, Mr. Keith was bumped by man with a group of three other individuals. *Id.* at 205-206. Mr. Keith noticed these individuals carrying guns on their hips. *Id.* After Mr. Keith left the store, he, Ms. Johnson and Mr. Bowman went back to the corner on 67th and Carlisle Streets. *Id.* at 175. About 10-15 minutes later, they saw four men on bikes who Mr. Keith saw in the Chinese take-out store just prior. *Id.* at 191. The men rode by two times; then two of them came out of the alleyway,

2

both with guns and two of them were on bikes, boxing in the three victims. *Id.* The two armed men fired roughly 15 shots towards Mr. Bowman, Ms. Johnson and Mr. Keith. *Id.* at 196. Mr. Keith ran and Mr. Bowman pushed Ms. Johnson out of the way. *Id.* Mr. Bowman was hit multiple times. *Id.* at 177. Mr. Bowman sustained gunshot wounds to his arm and back. N.T. 1/30/15 at 14. An ambulance arrived five minutes later and picked up Mr. Bowman. N.T. 1/29/15 at 177. After the ambulance took away Mr. Bowman, detectives recovered thirteen shell casings, ten 9mm casings and three .40 caliber cartridge casings. N.T. 1/30/15 at 69. On the date of this incident, July 6, 2013, Appellant and his co-conspirator did not have a valid license to carry a firearm. *Id.* at 135.

On July 7, 2013, detectives took a statement from Mr. Keith at Northwest Detectives. Mr. Keith told detectives that, "someone was shooting at us and my cousin got shot." N.T. 2/2/15 at 65. He said there were four people boxing them in, two coming from the alleyway and two on bikes. *Id.* at 71. He stated that that the people shooting at them hang out together. *Id.* at 66-67. Mr. 𝒦𝑒𝒾𝓉𝒽 believed that they were shot at because he, Ms. Johnson and Mr. Bowman were not from up there – meaning not from that area. *Id.* at 70. Also on July 7, 2013, detectives took a statement from Mr. Bowman at Einstein ER. *Id.* at 74. Mr. Bowman stated that he saw the shooters in the area before and that their group hangs out at 67th and Smedley Streets. *Id.* at 74-75. Mr. Bowman told detectives that the individuals were shooting at them because one of the offenders bumped into Mr. Keith at the Chinese take-out store about 10-15 minutes prior. *Id.* at 74. Mr. Bowman was hit twice, once in his back and once in his left arm. *Id.* at 75. Mr. Bowman then pointed out photo number eight in the first photo array as the individual who was with the group but not the shooter. *Id.* In the second photo array, Mr. Bowman pointed to and circled

3

picture number four as one of the shooters, Appellant. *Id.* at 75. Mr. Bowman then signed his name to the bottom of both photo arrays. *Id.* at 76.

This Court heard Appellant's motion to suppress the out-of-court identification of Appellant. On July 8, 2013, Detective Suchinsky encountered Mr. Bowman at the hospital for an interview. N.T. 1/28/15 at 8. Before Detective Suchinsky met with Mr. Bowman, he developed suspects in this case based off information received from other officers that work in the 35th District. *Id.* at 9. One officer told Detective Suchinsky that he had two people who fit the description and are usually in the area where the crime occurred. *Id.* Based on that information, they developed two photo arrays. *Id.* Detective Suchinsky spoke with Mr. Bowman and showed him the first photo array. *Id.* at 11. Mr. Bowman pointed to number four, a picture of Appellant and signed is name on the bottom. *Id.* at 13-14, 93-94. Mr. Bowman testified at the suppression hearing that on the night of July 6, 2013, he went to the Chinese take-out store with Ms. Johnson and Mr. Keith. N.T. 1/29/15 at 89-90. They then went to the corner of 67th and Carlisle Streets and sat outside of a church on the corner of the block. *Id.* at 90. Roughly 10-15 minutes later, Mr. Bowman saw four individuals on mountain bikes ride by two times. *Id.* at 91. He testified that he did not see Appellant on a bike or in the area. *Id.* Mr. Bowman then saw sparks and felt bullets hitting his body. *Id.* Mr. Bowman was then hospitalized. *Id.* Mr. Bowman now claims that Appellant was not there during the shooting and that he circled Appellant's photo in the array based off what Mr. Keith said. *Id.* at 94. Mr. Bowman admitted to lying under oath about his signature on the photo arrays during the suppression hearing. *Id* at 94.

Also, on July 8, 2013, detectives showed Mr. Keith two photo arrays. *Id.* at 203. He recognized the man in the number eight box of the first photo array as one of the individuals on a bike who tried to box them in during the shooting, a Mr. Omar Prioleau. *Id.* at 205. Mr. Keith

4

then recognized the man in the number four box of the second array, Appellant, as the individual who tried to bump him at the Chinese take-out store. *Id.* He stated on that date he recognized both individuals from the Chinese take-out store and that they had guns on their hips. *Id.* at 205-206. He stated that there were four people boxing them in, two coming out of the alleyway and two on bikes. *Id.* Although Mr. Keith stated on July 8, 2013, that he saw the individuals who shot at them, he claimed during the suppression hearing that he does not remember saying anything to the detective about his knowledge of the shooting. *Id.* at 205.

**DISCUSSION**

### 1. The evidence was sufficient to sustain a conviction for all convicted charges.

Appellant contents that the Commonwealth failed to provide sufficient evidence to convict Appellant on all convicted charges. Specifically, Appellant argues that there was no reliable in-court identification and that the evidence was so unreliable and contradictory the trier of fact could not have legally convicted Appellant of these charges.

In considering a challenge to the sufficiency of the evidence, the reviewing court must determine whether, viewing all the evidence at trial and the reasonable inferences therefrom in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was proven beyond a reasonable doubt. *Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012); *Commonwealth v. Marinelli*, 690 A.2d 203, 210-11 (Pa. 1997); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). This standard is applicable whether the evidence presented is circumstantial or direct, provided the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Morales*, 669 A.2d 1003, 1005 (Pa. Super. 1996). Furthermore, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all,

5

part, or none of the evidence. *Commonwealth v. Passmore*, 857 A.2d 697, 708 (Pa. Super. 2004). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

### a. Three counts of criminal attempt-murder of the first degree.

Appellant contends that the Commonwealth failed to prove the elements of attempted murder of Mr. Bowman, Ms. Johnson and Mr. Keith. "An individual is guilty of attempted murder in the first degree if he commits an act that is a substantial step towards the commission of the crime with a specific intent to kill." *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). In other words, the Commonwealth must show that Appellant had the specific intent to kill Mr. Bowman, Ms. Johnson and Mr. Keith and that he took a substantial step towards the commission of the crime.

Attempt with the intent to kill may be committed by the discharging of a firearm at a person with intent to kill, despite the fortuitous circumstances that no bodily injury is suffered. *Commonwealth ex rel. Robinson v. Baldi*, 106 A.2d 689, 690 (Pa. Super. 1954). *See also Commonwealth v. Clopton*, 289 A.2d 455 (Pa. 1972); *Commonwealth v. Cross*, 331 A.2d 813 (Pa. Super. 1974). Moreover, the element of intent may be inferred from circumstantial evidence in the absence of direct evidence. *Commonwealth v. Reynolds*, 222 A.2d 474, 475 (Pa. Super. 1966). Additionally, the general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002).

6

The Superior Court in *Cross*, 331 A.2d at 814 explained that although the victim suffered no injury, the defendant could still be found guilty of attempted murder by showing the defendant discharged his firearm with an intent to kill. The victim in *Cross* was parked and sitting in his car when the defendant approached and shot at him. *Id.* The bullet penetrated the passenger side where the victim sat, however, he was not injured. *Id.* Similarly, the court in *Baldi*, 106 A.2d at 690 convicted the defendant of attempted murder although no injury was inflicted on the victims. In *Baldi*, the defendant fired a shotgun at one of the victims. *Id.* at 690. The defendant subsequently fired the gun at two police officers who were attempting to apprehend him. *Id.* Fortunately, the defendant was a poor shot. *Id.* Although the victims sustained no injury, the court in *Baldi* explained that the defendant's actions were sufficient to convict him of attempted murder. *Id.*

Here, Appellant and his co-conspirators aimed and fired at least 13 rounds in the direction of all three individuals constituting a substantial step towards the commission of the crime of murder. N.T. 1/29/15 at 196. Although no words were exchanged that may support an intent to kill, Appellant and his co-conspirators boxed in and fired roughly 13 shots at the three victims on the corner of the block. *Id.* The circumstances surrounding the situation help show Appellant's intent to kill. The individuals at the Chinese take-out store bumped Mr. Keith roughly 10-15 minutes before the shooting. N.T. 1/29/15 at 205-206. They then rode their bicycles by Mr. Bowman, Mr. Keith and Ms. Johnson two times. *Id.* at 191. Then two of the four assailants approached them from the alleyway, both with guns, and fired roughly 13 rounds at all three individuals. *Id.* at 196. The other individuals helped box the victims in using their bicycles. N.T. 2/2/15 at 71. This circumstantial evidence satisfies the intent element of attempted murder. As a result, Mr. Bowman sustained bullet wounds in both his arm and back. *Id.* at 75. Though

7

Ms. Johnson and Mr. Keith were fortunate to sustain no injuries, Appellant and his co-conspirators' poor shooting should not absolve him of attempted murder. And although Ms. Johnson and Mr. Keith were not shot, they were all targets. *Id.* at 70. Mr. Keith hypothesized the reason they were all shot at was because they were not from the area. *Id.* Similar to *Cross* and *Baldi*, Appellant and co-conspirators discharged multiple rounds in the direction of Mr. Bowman, Ms. Johnson and Mr. Keith. N.T. 1/29/15 at 196. Appellant and his co-conspirators boxed in not only Mr. Bowman, but all three individuals on that corner. N.T. 2/2/15 at 71.

In sum, Appellant had the motive to kill the victims. Appellant's use of a deadly weapon to a vital part of the body – Mr. Bowman's back – shows his intent to kill. N.T. 1/30/15 at 177. The 13 shots fired in the direction of the three victims. N.T. 1/29/15 at 196. Appellant and his co-conspirators left the scene of the shooting. N.T. 1/30/15 at 177. And perhaps most importantly, Appellant and his co-conspirators boxed in the three victims, making them easy targets and preventing their escape. N.T. 2/2/15 at 71. Therefore, there was sufficient evidence to convict Appellant on all three counts of attempted murder.

**b. Three counts of aggravated assault.**

Appellant next contends that the Commonwealth failed to prove the elements of aggravated assault of Mr. Bowman, Ms. Johnson and Mr. Hakeem. An individual is guilty of aggravated assault if he, "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; . . . (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702. For aggravated assault, the Commonwealth need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred. *Commonwealth v. Galindes*, 786 A.2d

8

1004, 1012 (Pa. Super. 2001). The intent to cause serious bodily injury within the context of a charge for aggravated assault may be proven by direct or circumstantial evidence. *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003). Circumstantial evidence can prove that the accused intended to inflict serious bodily injury upon another, as is required to establish crime of aggravated assault. *Commonwealth v. Lopez*, 654 A.2d 1150, 1155 (Pa. Super. 1995). The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom. *Id.*

At the outset, because there is sufficient evidence to convict Appellant of attempted murder of all three victims, there is sufficient evidence to convict Appellant of aggravated assault, as it is a lesser included offense. Aggravated assault is included within the offense of attempted murder since every element of aggravated assault is subsumed in the elements of attempted murder. *Commonwealth v. Anderson*, 650 A.2d 20, 22 (Pa. 1994). "Once the Commonwealth established guilt of attempted murder, no additional evidence was required to secure appellant's conviction for the aggravated assault. Appellant's act of shooting the victim in the back of the neck constituted both aggravated assault and attempted murder." *Id.* The Supreme Court of Pennsylvania in *Anderson* explained that the act necessary to establish attempted murder coincides with the same act necessary to establish an aggravated assault conviction. *Id.* at 23. Further, *Anderson* stated that since the intent necessary to establish attempted murder is greater than aggravated assault, the aggravated assault intent threshold is already met by proving intent for attempted murder. *Id.* However, in the event that Appellant's attempted murder conviction does not remain, this Court provides that the elements of aggravated assault are met anyway.

9

In *Commonwealth v. Payne*, 868 A.2d 1257, 1261-1262 (Pa. Super. 2005), the court determined that the defendant caused serious bodily injury to the victim. The court in *Payne* noted that since the defendant caused the victim serious bodily injury, – in this case, one shot to the back – the Commonwealth, at a minimum, had to prove that the defendant caused these injuries "recklessly under circumstances manifesting extreme indifference to the value of human life." *Id.* at 1261. In other words, the Commonwealth had to prove that the defendant acted with malice. *Id.* Evidence that the defendant in *Payne* shot the victim once in his back as he tried to run away was sufficient to establish that he acted with malice. *Id.* The Commonwealth thus established each element required to convict the defendant of aggravated assault. *Id.* at 1261-1262. The court in *Commonwealth v. Daniels*, 354 A.2d 538, 539 (Pa. 1976) determined that while there is no evidence that the defendant intended to hit the victim, such evidence was not necessary. *Daniels* explained that the jury could properly find from the evidence that firing a number of shots in a barroom full of people constituted reckless conduct which manifested extreme indifference to the value of human life. *Id.*

In *Commonwealth v. Rosado*, 684 A.2d 605, 609 (Pa. Super. 1996) evidence of the defendant repeatedly discharging his semi-automatic weapon into the second-story windows of the victims' bedroom was sufficient to establish that the defendant possessed the specific intent to inflict serious bodily injury to the occupants of that room for the purposes of aggravated assault. The *Rosado* court explained that discharging a weapon into a structure where people live is sufficient to demonstrate intent to commit aggravated assault. *Id.* The court went on to explain that attempt to cause serious bodily harm to a person in the home can be inferred, since possibility exists that such person could be harmed if someone were to shoot into the home. *Id.*

10

The court in *Galindes*, explained that sufficient evidence supported an aggravated assault conviction; even though the victim was not struck by any bullets, the act of firing a gun toward him constituted an attempt to cause serious bodily injury, thereby committing the offense of aggravated assault. *Galindes*, 786 A.2d at 1012. The *Galindes* court determined that firing a gun constitutes the type of conduct that is likely to result in serious bodily injury. *Id.* Further, the intent to injure, as required by the statute, is also inferred from such conduct. *Id. Galindes* ruled that viewing the evidence in the light most favorable to the Commonwealth, the aggravated assault charge was sufficiently supported. *Id.*

Here, Mr. Bowman sustained serious bodily injury through his gunshot wounds, therefore not requiring a showing of Appellant's actual intent to cause serious bodily injury.[1] More convincing than *Payne*, Mr. Bowman was not only shot in the back, but also shot in the arm. N.T. 2/2/15 at 75. Since we have a showing of serious bodily injury to Mr. Bowman, the Commonwealth must then prove that Appellant's actions constituted reckless conduct which manifested extreme indifference to the value of human life. Analogous to *Daniels*, Appellant and his co-conspirator firing multiple rounds in the direction of Mr. Bowman is by itself, at the very minimum reckless behavior under circumstances manifesting extreme indifference to the value of human life. *Id.* Therefore, the Commonwealth provided sufficient evidence for the aggravated assault of Mr. Bowman.

Since Ms. Johnson and Mr. Keith were unharmed by the shooting, the Commonwealth must show that Appellant intended to shoot both individuals to sustain a conviction for aggravated assault. Like *Rosado*, there is minimal direct evidence showing that Appellant

---

[1] This Court instructed the jury on both aggravated assault charges separately. N.T. 2/2/15 at 33-35. First, this Court instructed the jury on the "attempt to cause serious bodily injury" form of aggravated assault with respect to Ms. Johnson and Mr. Keith and "causing serious bodily injury" form of aggravated assault with respect to Mr. Bowman. *Id.* at 35-40.

11

intended to shoot Ms. Johnson or Mr. Keith. However, the circumstantial evidence here is sufficient to establish that Appellant had the intent to cause seriously bodily injury to both Ms. Johnson and Mr. Keith. Analogous to the defendant in *Rosado*, Appellant fired multiple rounds of a semi-automatic weapon in the direction of the three individuals. N.T. 1/29/15 at 196. Even more convincing than *Rosado*, the three victims in this case were out in the open rather than inside a second story bedroom. *Id.* Following the ruling in *Rosado*, Appellant and co-conspirators pointing and discharging roughly 15 rounds in the direction of Ms. Johnson and Mr. Keith is sufficient to show that the Appellant's conduct constituted an intent to cause serious bodily injury to both individuals. *Id.* Therefore, there is sufficient evidence to convict Appellant of all three counts of aggravated assault.

### c. Conspiracy.

Appellant next contends that the Commonwealth failed to prove the elements for conspiracy – murder. The elements for conspiracy are set forth below:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. "Intent required for criminal conspiracy is identical to that required for accomplice liability; in both crimes, defendant must act with intent of promoting or facilitating commission of offense." *Commonwealth v. Ruffin*, 463 A.2d 1117, FN7 (Pa. Super. 1983). However, direct proof of an agreement is not required. *Id.* at 1118. The conduct of the parties and the circumstances surrounding such conduct may be sufficient to establish an inference of agreement. *Commonwealth v. Kennedy*, 453 A.2d 927, 929-930 (Pa. 1982).

12

The Superior Court in *Commonwealth v. Collins*, 70 A.3d 1245, 1250 (Pa. Super. 2013) determined that there are reasonable grounds from which the jury could infer an agreement. In *Collins*, the witness saw the defendant and another person approach the murder scene and later flee that scene together. *Id.* Detectives recovered 9mm and .40 caliber casings from the scene which strongly suggests that the gunmen were working together. *Id.* The overt act was the murder itself because the object of the conspiracy was successfully carried out. *Id.* The court in *Collins* determined that the Commonwealth proved all elements of conspiracy. *Id.*

The court in *Commonwealth v. Wanamaker*, 444 A.2d 1176, 1178-1179 (Pa. Super. 2013) determined that there was sufficient evidence to sustain a conspiracy to commit murder conviction. In *Wanamaker*, the defendant directed his brother to bring the defendant's loaded rifle. *Id.* at 1177. The defendant then fired the rife in the direction of the complainant. *Id.* The *Wanamaker* court explained that firing a rifle in the direction of the complainant revealed a conscious disregard of a great risk that the defendant might have inflicted death or serious bodily harm upon the complainant. *Id.* at 1178. Further, the defendant's actions by he and his brother amounted to a conspiracy to engage in activity that manifested such malice as to constitute a criminal conspiracy to commit murder even though no one was injured. *Id.*

Here, although there was no evidence of a verbal agreement, Appellant and his co-conspirators' actions satisfied the agreement requirement of conspiracy. The facts of this case regarding conspiracy fall almost directly in line with *Collins*. Appellant and co-conspirators were seen together on bicycles circling the area of 67th and Carlisle two times. N.T. 1/29/15 at 175. Like the co-conspirators in *Collins*, Appellant and his co-conspirators were seen approaching and fleeing the scene together. *Id.* And identical to the facts in *Collins*, casings to 40 caliber and 9mm rounds were found at the scene, meaning there were two guns used. N.T. 1/30/15 at 69.

13

Additionally, Appellant and his co-conspirators were seen together at the Chinese store when they bumped into Mr. Keith minutes prior to the shooting. N.T. 1/29/15 at 191. Also, following *Collins*, discharging their firearms at Mr. Bowman, Ms. Johnson and Mr. Keith constitutes an overt act, although the victim in *Collins* was murdered. *Id.* at 195. Since, there was evidence supporting an agreement and an overt act, each element of conspiracy is met. Additionally, like *Wanamaker*, firing of rounds in the direction of Mr. Bowman, Ms. Johnson and Mr. Keith represented at the very least a conscious disregard of a great risk that Appellant and his co-conspirators could have inflicted death or serious bodily harm to all three individuals. *Id.* Appellant and his co-conspirators' actions amounted to a conspiracy to engage in activity that manifested such malice as to constitute a criminal conspiracy to commit murder. *Id.* Therefore, there was sufficient evidence to convict Appellant of conspiracy to commit murder.

### d. VUFA 6106 and 6108.

Appellant next contends that there is not sufficient evidence to convict him under both VUFA 6016 and 6108. First, under 18 Pa.C.S.A. § 6106:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106. The court in *Commonwealth v. Petrakovich*, 329 A.2d 844, 847 (Pa. 1984) determined there was sufficient evidence to support a conviction of carrying firearm without license against the defendant who – based on witness testimony – walked into the diner where his wife worked, drew a gun and fired it at his wife.

Next, under 18 Pa.C.S.A. § 6108:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1) such person is

14

licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108. Testimonial evidence was sufficient to prove the defendant guilty of carrying firearms on public streets or public property in Philadelphia when he shot victim on a Philadelphia public street. *Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980).

Ultimately, the Commonwealth must prove that Appellant carried a firearm in public without a license for VUFA 6016 and that it occurred on the streets of Philadelphia for VUFA 6108. Here, like *Monroe* and *Petrakovich* there is witness testimony that Appellant possessed a firearm in public, while on foot, on 67th and Carlisle Streets in Philadelphia. N.T. 2/2/15 at 75; N.T. 1/29/15 at 196. Appellant was also seen carrying a gun on his hip at the Chinese store minutes prior to the shooting. *Id.* at 205-206. Additionally, the Commonwealth provided a certificate of non-licensure which stated that on the date of this incident, July 6, 2013, Appellant did not have a valid license to carry a firearm. N.T. 1/30/15 at 135. Therefore, the Commonwealth provided sufficient evidence to sustain the convictions for both VUFA 6106 and 6108.

### e. PIC

Appellant asserts that the Commonwealth did not provide sufficient evidence to sustain a conviction of PIC. A person is convicted of PIC if he possesses any instrument of crime with intent to employ it criminally. 18 Pa.C.S.A. § 907(a). "In order to convict appellant of [PIC], the Commonwealth had to prove that she possessed her gun under circumstances manifestly inappropriate for such lawful uses the gun may have had and with an intent to employ it criminally." *Commonwealth v. Jeter*, 418 A.2d 625, 628 (Pa. Super. 1980).

In *Jeter*, evidence that the defendant entered victim's bar, drew a loaded gun from her pocket, and fired it twice at the victim was sufficient to sustain a conviction for PIC. *Id.* In

15

*Commonwealth v. McNair*, 603 A.2d 1014, 1017 (Pa. Super. 1992), evidence that the defendant used a loaded gun to shoot the victims was sufficient to support the conviction for PIC. The court in *Monroe*, 422 A.2d at 195 explained that testimonial evidence supported the conviction for PIC where the defendant used a firearm to shoot the victim. In *Monroe*, the witness stated that he observed the firearm in the defendant's hand as the second shot was being fired. *Id.* The *Monroe* court stated that even if there is no direct evidence that the defendant concealed the weapon on his person, it can reasonably be inferred from the victim's testimony. *Id.*

Here, testimonial evidence that Appellant discharged a firearm at the victims, by itself, is sufficient to establish Appellant's guilt of possession of an instrument of crime. N.T. 1/29/15 at 196. This case is analogous to *McNair*, *Monroe* and *Jeter* because Appellant here also fired a gun at the victims. *Id.* Like the all three cases, the testimonial evidence here is sufficient to show that Appellant possessed a firearm. N.T. 2/2/15 at 75; N.T. 1/29/15 at 196. The distinctions in the results of the shootings, however, are irrelevant. Here, the credible testimony provided that Appellant possessed a gun and had the intent to criminally employ it through his decision to discharge the firearm. *Id.* Therefore, there is sufficient evidence to convict Appellant of PIC.

## 2. This Court did not err in failing to grant Appellant's motion to suppress the out-of-court identification.

Lastly, Appellant argues that this Court erred in denying his motion to suppress the out-of-court identification of Appellant. Specifically, Appellant contends that the police detectives influenced Mr. Bowman and Mr. Keith to select Appellant in the photo array as the shooter. Since Mr. Bowman admitted to lying under oath at the suppression hearing, this contention is wholly meritless.

An appellate court is bound by the suppression court's findings of fact if the record supports those findings. *Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008)

16

(quoting *Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa. Super. 2000)). However, the suppression court's legal conclusions arising from those factual findings are reviewed *de novo*. *Commonwealth v. Briggs*, 12 A.3d 291, 320-21 (Pa. 2011) (citing *Commonwealth v. Synder*, 963 A.2d 396, 400 (Pa. 2009)). "It is within suppression court's sole province as factfinder to pass on credibility of witnesses and weight to be given to their testimony; court is free to believe all, some or none of evidence presented at suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003). The Commonwealth bears the burden of establishing that any identification testimony offered at trial is free of taint and illegality. *Commonwealth v. Moore*, 633 A.2d 1119, 1125 (Pa. 1993).

Here, this Court found the detective's testimony to be credible. N.T. 1/29/15 at 109-111. Through the detective's testimony, the Commonwealth proved that the identification testimony is free from taint. *Id.* at 110-111. The only time this Court hears of tainted identification evidence is when referenced by Mr. Bowman, who also admitted to lying under oath. *Id.* at 94. This Court, for good reason, found Mr. Bowman's testimony to be incredible at the suppression hearing. *Id.* at 110. Mr. Bowman admitted to lying about whether or not it was his signature at the bottom of the photo array:

> **THE COURT:** You said that at the prelim, but today you said it was your signature?
>
> **THE WITNESS:** Yeah.
>
> **THE COURT:** So which is it? It is or it isn't?
>
> **THE WITNESS:** That is not my signature on this picture. It is not.
>
> **THE COURT:** You do realize you told me a little bit earlier today –
>
> **THE WITNESS:** I do.
>
> **THE COURT:** So you acknowledge that you at least one time did not tell the truth under oath.

17

**THE WITNESS:** Yes.

**THE COURT:** It is credibility. Your witness just admitted to lying under oath. I don't know how I could be the one to make that credibility determination. I think it is a trial issue. There is corroboration that your client is involved. So I don't know how I fall in favor of the police just on the face of it.

**THE COURT:** I don't believe anything [Mr. Bowman] said. I really don't. I am sorry. I don't know what to believe. He doesn't – I can't rely on someone who is a known perjurer. Who admitted to lying. I can't rely on his word to say that he was so under the influence – nothing he said made any sense. He doesn't know how to lie. He is a terrible liar.

N.T. 1/29/15 at 96-97, 109 - 111. This Court correctly determined Mr. Bowman as an incredible witness at the suppression hearing. *Id.* at 111.

This Court properly considered the officer's testimony to be credible. *Id.* Here, on July 8, 2013, detectives showed up to the hospital to question Mr. Bowman. *Id.* at 93. Detective Suchinsky showed Mr. Bowman the first photo array and Mr. Bowman circled number four, the Appellant. *Id.* at 13-14. Mr. Bowman then signed his name to the bottom of the array. *Id.* at 93-94. This Court properly allowed his identification into trial for the jury to make the final credibility determination. *Id.* Since this Court properly discounted Mr. Bowman's in-court testimony, the police detectives did not influence him to select Appellant as the shooter in the photo array. This Court acted within its discretion when it believed Mr. Bowman's identification on July 8, 2013 and discounted his in-court testimony. *Id.* at 109. Therefore, this Court did not err in failing to grant the motion to suppress Mr. Bowman's and Mr. Keith's out-of-court identification of Appellant.

18

**CONCLUSION**

After review of the applicable statutes, testimony, and case law, there is sufficient evidence to find Appellant guilty of all offenses since the fact-finder was free to believe all, part or none of the witness testimony. Additionally, this Court did not err in denying Appellant's motion to suppress the out-of-court identification. Accordingly, the trial court's decision should be affirmed.

BY THE COURT:

*Diana L. Anhalt*

DATE: March 17, 2017            DIANA L. ANHALT, J.

19

## PROOF OF SERVICE

I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

Michael P. Marryshow, Esquire
P.O. Box 22658
Philadelphia, PA 19110

Hugh Burns, Esquire
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Date: 3/17/17

By: _____
     Diana Anhalt, Judge