J-S06014-25

2025 PA Super 40

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :                  PENNSYLVANIA
                                                :

            v.                                  :
                                                :
                                                :

ELIJAH RASHAD GARY                       :
                                                  :
                Appellant               :      No. 289 WDA 2024

Appeal from the Judgment of Sentence Entered February 16, 2024
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003129-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:               **FILED: February 21, 2025**

Elijah Rashad Gary appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas on February 16, 2024. On appeal, Gary challenges the sufficiency of the evidence supporting his robbery and conspiracy to commit robbery convictions. After careful review, we affirm.

The trial court comprehensively summarized the relevant evidence presented during trial, fully supported in the record, as follows:

> The instant case arises out of the shooting death of Jason Raiford on July 3, 2022 in New Kensington, Pennsylvania, Westmoreland County. Following an investigation, [Gary], along with co-defendants: Amil Kennedy, Da'Montae Blooks, Raquan Carpenter, Braedon Dickinson, Avian Molter, and Jonathan Felder were charged in connection with this incident. Specifically, on July 3,2022, a criminal information was filed charging [Gary] with the following offenses:
>
> 1. Criminal Homicide, in violation of 18 Pa.C.S.A. § 2501(a);

2. Murder of the Second Degree, in violation of 18 Pa.C.S.A. § 2502(b);

3. Robbery-Inflict Serious Bodily Injury, in violation of 18 Pa.C.S.A. § 3701(a)(1)(i);

4. Robbery-Threat of Immediate Serious Injury, in violation of 18 Pa.C.S.A. § 3701(a)(1)(ii);

5. Aggravated Assault, in violation of 18 Pa.C.S.A. § 2102(a)(1);

6. Criminal Conspiracy to Commit Robbery, in violation of 18 Pa.C.S.A. § 903;

7. Criminal Conspiracy to Commit Aggravated Assault, in violation of 18 Pa.C.S.A. § 903; and

8. Possession of a Firearm by a Minor, in violation of 18 Pa.C.S.A. § 6110.1(a).

On November 30, 2023, the Commonwealth moved to amend Count Eight of the criminal information to reflect the charge of Firearms Not to be Carried Without a License, in violation of 18 Pa.C.S.A. § 6101(a)(1). On December 4, 2023, [Gary], along with codefendants Mr. Kennedy and Mr. Brooks, proceeded to a jury trial before this Court. . . .

During trial, Jason Kerr, of the City of New Kensington Police Department, testified that on July 3, 2022, at 1:58 p,m., he received a dispatch to the Valley Royal Court Apartments in the city of New Kensington for shots-fired. Detective Paul Manke, of the New Kensington Police Department, and co-affiant on this case, testified that he also responded to the scene, and through his investigation, he obtained security video from the Stop N Go convenient store depicting [Gary] and his co-defendants prior to the incident as well as video surveillance footage from the Valley Royal Court Apartments depicting different angles during the time of the incident. The Commonwealth introduced these videos, as well as still images to establish a timeline of events and to depict the events that ultimately led to the death of Mr. Raiford and the events immediately following. The Commonwealth's theory at trial was that [Gary] along with his co-defendants participated in a plan to assault and rob Mr. Raiford over a drug debt owed to [Gary]

- 2 -

whereby they cornered the victim in front of a stairwell of an apartment complex; [Gary] attempted to pistol whip Mr. Raiford but dropped the gun resulting in a scuffle; and then Mr. Kennedy, who was in possession of an AR-15 style semiautomatic rifle, exited the apartment complex and began shooting Mr. Raiford, killing him.

Forensic Pathologist, Doctor Jennifer Hammers, D.O. testified that she conducted an autopsy of Mr. Raiford on July 4, 2022. Dr. Hammers indicated that Mr. Raiford died as a result of gunshot wounds to his head, torso, and extremities. Specifically, Dr. Hammers identified 11 gunshot-wound paths that were distinct gunshot wounds. Dr. Hammers explained that the extensive injury to Mr. Raiford's brain would have most likely caused him to be immediately unconscious, and, therefore, unable to have any willful type of movement. Further, Dr. Hammers testified that given the level that his spinal cord was transected at, it would cause Mr. Raiford to be unable to utilize the lower part of his body, including his legs. Dr. Hammers testified that the gunshot wound to Mr. Raiford's head, as well as the two gunshot wounds that struck his heart, would almost certainly cause him to pass away. Additionally, Dr. Hammers confirmed that Mr. Raiford had four independent entrance wounds on his back.

Detective Toad Roach, of the Westmoreland County Detectives Bureau-forensic division, was qualified as an expert in forensic crime scene analysis at trial. Detective Roach testified that on the date of the incident, he responded to the Valley Royal Court Apartments and began processing the scene. Through his investigation, Detective Roach marked, measured, photographed, and secured items of evidentiary value. Specifically, Detective Roach testified that he recovered 12 spent cartridges, with two additional cartridge casing located later. Detective Roach testified that while processing the scene, he learned that a firearm was located underneath a bush by the nearby Geo-Solutions building, and he went to the location to photograph and secure the evidence. Detective Roach testified that the firearm, a Smith & Wesson M&P Model 15 Rifle, was in the fire position, and there was a round in the chamber.

Corporal Creighton Callas, an enlisted member of the Pennsylvania State Police and assigned as a firearm and tool mark examiner at the Greensburg Regional Laboratory, testified that he examined the firearm, discharged cartridge cases, and discharged

bullets that he received from Detective Roach. Corporal Callas stated that he examined the Smith & Wesson semi-automatic rifle that was submitted to him, and he confirmed that with a semiautomatic weapon, you have to pull the trigger and release it each time for the next subsequent discharge. Corporal Callas testified that through his examination, he was able to identify all of the discharged cartridge cases submitted to the submitted firearm. Additionally, Corporal Callas indicated that he examined both undischarged cartridges from the firearm that was submitted and bullet fragments and determined that the undischarged cartridges were consistent with the discharged cartridge cases, and the bullet fragments were consistent with the type that would have been from the firearm.

Mr. Carpenter, who was also charged with second degree murder and related offenses in connection with this matter, testified at trial. Mr. Carpenter's testimony established that on July 3rd, he was at the Valley Royal Court Apartments "couch surfing" before he went outside and was eventually met by [Gary], Mr. Kennedy, Mr. Molter, Mr. Brooks, Mr. Felder, and Mr. Dickinson. Mr. Carpenter stated that he sat with and talked to [Gary] on the steps in the foyer when he heard someone say, *Mr. Raiford is coming*. According to Mr. Carpenter, at this time, [Gary] informed him that he was angry because Mr. Raiford was "strong-arming him out of his money", and "he wasn't going to let him keep spinning him out of his money[,] he wasn't going to let him burn him again". Mr. Carpenter stated that guns were being passed around, and [Gary] asked Mr. Carpenter for the gun sitting next to him on the steps, and Mr. Carpenter handed it to him. Mr. Carpenter testified that he knew that there was going to be an altercation and since he had a personal relationship with Mr. Raiford, he got up and left the building as Mr. Raiford was entering.

Mr. Carpenter stated that after he exited, he observed from outside the door, Mr. Felder, Mr. Brooks, Mr. Dickinson, Mr. Molter, and Mr. Kennedy enter the building and someone said, "do you got the money?". Mr. Carpenter's testimony established that Mr. Raiford got aggressive, [Gary] punched him, they got into a scuffle, the same gun that Mr. Carpenter handed to [Gary] minutes earlier fell to the ground making a loud bang, and Mr. Raiford began yelling to get off of him and reached for and picked up the gun. According to Mr. Carpenter, Mr. Raiford stated, "Get the fuck-get back", while aiming the gun at everyone and moved

back in the direction of the door to exit. On cross-examination, Mr. Carpenter confirmed that Mr. Raiford said "like what the fuck is wrong with y'all, like, chill".

Mr. Carpenter testified that he began to run away but he stopped and observed Mr. Raiford angrily walking back towards the parking lot before he was shot by Mr. Kennedy. Mr. Carpenter confirmed that Mr. Raiford was not pointing the gun at Mr. Kennedy, but Mr. Raiford made eye contact with him, and Mr. Kennedy fired *a lot* of rounds with most of the bullets hitting Mr. Raiford. Mr. Carpenter confirmed that Mr. Raiford went to the ground pretty quickly, and Mr. Kennedy continued to fire a couple of shots before moving the gun away from Mr. Raiford's body. At this time, Mr. Carpenter testified that everyone ran out of the building and scattered.

Detective Jason Napier, of the Westmoreland County Detectives Bureau and co-affiant on this case, testified relative to his involvement in this matter. Detective Napier stated that following the incident he, along with Detective Manke, reviewed the relevant video footage from the Valley Royal Court Apartments. When asked whether Detective Napier believed that the videos were consistent with a drug sale based upon his training and experience, he testified, "not at all". Rather, Detective Napier testified that the videos were consistent with a robbery. Detective Napier testified that on July 6, 2022, Mr. Kennedy was apprehended after turning himself in at the New Kensington Police Station, and on September 8, 2022, [Gary] and Mr. Brooks were apprehended by the U.S. Marshals. According to Detective Napier, he and Detective Manke interviewed [Gary] at the City of Lower Bunell Police Department. During the interview, [Gary] informed them that on the morning of July 3rd, he was present at Mr. Felder's residence in Arnold, along with Mr. Kennedy, and the three of them went to 108 McCandless Street where they met up with Mr. Brooks, Mr. Molter, and Mr. Dickinson. According to [Gary], Mr. Kennedy retrieved a rifle from inside the residence, and he stated that Mr. Brooks and Mr. Dickinson were also armed with firearms at that time. [Gary] relayed that the six of them left the residence on foot to "go down to the projects to chill", and on the way, they stopped at the Stop N Go.

During the interview, [Gary] stated that Mr. Raiford arrived at the location, and as he owed [Gary] a hundred dollars for crack cocaine, he was going to confront him. According to Detective

Napier, [Gary] told him that "*before they bring him back to me, meaning Jason Raiford, he said [Mr. Carpenter] gave me his gun in case he tried to make a run for it*", and [Gary] acknowledged to striking Mr. Raiford with the gun before it fell to the floor. Detective Napier further stated [Gary] indicated that he remained inside while shots were being fired, and then he and Mr. Felder ran back to [Gary]'s residence. During the interview, [Gary] allegedly stated that despite knowing detectives were looking for him, he panicked and stayed with his girlfriend, his godmother, and his sister before being picked up by the U.S. Marshals.

Co-defendant Mr. Kennedy also elected to testify during the trial. Mr. Kennedy's testimony established that on the date of the incident, he went to the Stop N Go store with [Gary] and Mr. Felder before walking to the projects to "chill". Mr. Kennedy testified that at that time, he was in possession of a loaded rifle, which he previously purchased from someone on the streets of New Kensington and carried for his protection. Mr. Kennedy stated that he previously met Mr. Raiford a week or two before the incident when he was with [Gary], and [Gary] told him that Mr. Raiford owed him money and he was going to confront him about it. During the interaction, Mr. Kennedy testified that [Gary] and Mr. Raiford got into an argument and Mr. Raiford threatened to kill both [Gary] and Mr. Kennedy.

During trial, Mr. Kennedy testified as to the events that occurred on July 3rd leading up to Mr. Raiford's death. On cross-examination, Mr. Kennedy confirmed that when he left the residence where he was staying on the morning of the incident, he took his loaded long rifle with him and he concealed it down his pants. Mr. Kennedy confirmed that prior to [Gary] pistol whipping Mr. Raiford, the video displayed him pulling out his gun and taking a few steps forward. Mr. Kennedy claimed he did this because the argument started escalating, and he could tell that something was going to happen.

Mr. Kennedy stated that after the gun fell and Mr. Raiford was coming towards him, he tried to push Mr. Raiford with his rifle and then exited the building when he saw Mr. Raiford retrieve the gun off of the floor. Mr. Kennedy confirmed that the video exhibits depicted Mr. Raiford motion to Mr. Molter and [Gary] signifying "come on, we're done". According to Mr. Kennedy, he exited the building because he was afraid, but he stopped to see if anyone else was coming out. Mr. Kennedy stated that he saw Mr. Raiford

in the doorway holding the gun, swinging it back and forth outside and inside of the building and yelling "watch out and move". Mr. Kennedy testified that in response, he continued to backup and raise the firearm he was holding.

      Mr. Kennedy acknowledged to shooting Mr. Raiford, but he argued that he shot him in self-defense or defense of others because he was afraid that Mr. Raiford would point the gun back at him and possibly shoot him or [Gary] who was still inside the building. Mr. Kennedy testified that after shooting Mr. Raiford and retrieving the gun from him, he panicked and started running. Mr. Kennedy confirmed that he threw the rifle in a bush, and while he was running away, he stopped and changed his clothes.

      Prior to jury deliberations, the Commonwealth orally moved to dismiss Counts One, Seven, and Eight. On December 8, 2024, the jury returned a verdict finding [Gary] guilty of Counts Three through Six and found [Gary] not guilty of Count Two.

Trial Court Opinion, 4/24/24, at 1-8 (unnecessary capitalization and citations omitted; emphasis in original). On February 16, 2024, the trial court sentenced Gary to an aggregate term of 10 to 20 years' incarceration followed by one year of reentry supervision, plus restitution, costs, and fees. No post-sentence motions were filed. This timely appeal followed.

In his sole issue raised on appeal, Gary argues the evidence was insufficient to support his robbery charges as well as the charge for conspiracy to commit robbery, because the Commonwealth failed to prove a theft occurred.

We begin by noting our standard of review:

      The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we

may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted).

Gary contends the evidence is insufficient to sustain his convictions related to robbery because there is no evidence he committed a theft. We find no relief is due.

Gary was convicted of robbery under 18 Pa.C.S.A. § 3701(a)(1)(i) and (ii), which provide:

**§ 3701. Robbery**

**(a) Offense defined.**—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

18 Pa.C.S.A. § 3701(a)(1)(i)-(ii) (bold in original).

- 8 -

This Court has held "[a] conviction for robbery does not require proof of a completed theft[.]" **Commonwealth v. Robinson**, 936 A.2d 107, 110 (Pa. Super. 2007). Rather, "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2); **see Robinson**, 936 A.2d at 110.

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). On the other hand, "[a]n attempted theft is committed when a person, with intent to commit a theft, does any act which constitutes a substantial step toward commission of the theft." **Commonwealth v. Ennis**, 574 A.2d 1116, 1119 (Pa. Super. 1990) (citing 18 Pa.C.S.A. § 901(a)).

According to Gary, the Commonwealth merely established that he aggressively confronted Raiford. **See** Appellant's Brief, at 17. Gary contends the Commonwealth failed to present any evidence that a theft occurred. **See id.** at 18. Accordingly, Gary concludes, the Commonwealth did not establish robbery. **See id.** We disagree.

Notably, there is no dispute here that a completed theft did not occur. However, we agree with the trial court that the Commonwealth presented sufficient evidence that proved, beyond a reasonable doubt, that Gary and his co-defendants *attempted* to commit a theft.

Based upon the testimony presented, the jury could have reasonably inferred that the co-defendants' initiation of a confrontation with Raiford and demand for money was no mere request. Gary confronted Raiford accompanied by multiple other individuals, brandishing multiple firearms, one of which was used in an attempt to strike Raiford, and another which was used to fatally shoot Raiford. The jury was free to believe Gary and his co-defendants planned to confront the victim in order to take back the money that was owed to Gary. Finally, under the facts as presented at trial, it was reasonable to infer Raiford felt sufficiently threatened, *see* 18 Pa.C.S.A. § 3701(a)(1)(ii), and it is uncontested that Raiford did actually suffer serious bodily injury. ***See id***. at § 3701(a)(1)(i).

Accordingly, the Commonwealth proved beyond a reasonable doubt that Gary, with the intent to take money from the victim, took a substantial step toward those ends, and therefore, the evidence was sufficient to prove the "in the course of committing a threat" element of robbery. ***See Commonwealth v. Sanchez***, 36 A.3d 24, 41 (Pa. 2011) ("That circumstances made it such that [the] appellant and his accomplices failed to obtain and remove money (or other valuables) is irrelevant because proof of an attempted theft is sufficient to establish the 'in the course of committing a theft' element of robbery.") (citation omitted). Therefore, we find the Commonwealth presented sufficient evidence that Gary committed robbery.

While Gary also raises a challenge to his conspiracy conviction, he does not challenge the sufficiency of the evidence regarding his conspiracy charge as a whole. Rather, he only contends he cannot be found liable for conspiracy to commit robbery, based on his above assertion that a robbery did not occur. As we have already concluded the evidence was sufficient to support Gary's convictions for robbery, we find his challenge to the conspiracy charge without merit as well. As we find Gary has not raised any challenge to a specific element of the conspiracy charge, we find any such argument waived. *See Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017) (stating that in order to preserve a sufficiency claim on appeal, an appellant must specify in the 1925(b) statement the element or elements upon which the evidence was insufficient).

As we find the evidence was sufficient to support Gary's convictions, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2025

- 11 -